ance policy were funds paid within the meaning of 11 U.S.C. § 552(b).

First Atlanta argues that the above exception applies and that the sum in question is subject to their lien. They contend that the increased cash value resulting from the post-petition payments were funds paid within the meaning of § 552(b) for the reason that it was part and parcel of property which existed prior to the filing of the bankruptcy petition, and not separate, distinct and identifiable property in and of itself. The bankruptcy trustee contends that the exception does not apply and the sum in question is not subject to First Atlanta's lien.

There is no case on point on this issue. First Atlanta urges us to extend their security interest to the sum in question. However, the arguments presented in their favor are not persuasive. Instead we follow the reasoning set forth in the Bankruptcy Court's Memorandum Opinion. An analogy was made to bank accounts in which a creditor has a security interest into which deposits are made post-petition. In that situation, the bankruptcy court has held that any lien that a creditor has on the bank account is limited to the amount on deposit at the time that the case commenced. *In re Executive Associates*, 24 B.R. 171 (Bankr.S.D.Tex.1982). The subsequent post-petition deposits into a bank account are very similar to subsequent post-petition payments of premiums that increase the cash surrender value of a life insurance policy. In addition, analogies can also be drawn to post-petition account receivables. *In re Walker*, 35 B.R. 237 (Bankr.N.D.Ga.1983) (the post-petition receivable were implicitly held to be property "acquired by the estate or by the debtor after the commencement of the case").

The increased cash surrender value of the life insurance policy is not any form of "proceeds, product, offspring, rents, or profits" within the meaning of § 552(b). In other words, the subsequent premium payments made by the debtor's wife and son from their own separate assets which occurred from the date of the filing of the debtor's Chapter 11 petition to its conversion to Chapter 7 was property of the es-

tate and such funds are not subject to First Atlanta's lien.

The cash surrender value at the commencement of the case in May of 1986 was $5,917.53 which amount was paid to the creditor sometime in December of 1987. The increase in the cash surrender value from the filing of the Chapter 11 petition in May of 1986 to the conversion to a Chapter 7 proceeding on September 29, 1987 amounted to a sum of $15,574.74. Interest has accrued on this balance since it was placed in escrow. This sum of $15,574.74 and any interest which has accrued is considered to be after acquired property which becomes part of the bankruptcy estate. This increase in the cash surrender value after the commencement of the Chapter 11 proceeding pending the conversion to the Chapter 7 proceeding is not a part of the security interest for the loan.

### III. CONCLUSION

For the reasons stated in the Bankruptcy Court's Memorandum Opinion and based on the foregoing, we hold as a matter of law, that any increase in the cash surrender value of a life insurance policy, which had been assigned by the debtor to the creditor, as collateral, from the date of the filing of the debtor's Chapter 11 petition to its conversion to Chapter 7 was property of the estate and not subject to First Atlanta's lien.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Willie Frank GOOLSBY,**
**Defendant–Appellant.**

**No. 89–8630**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1990.

Suzanne Hashimi, Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

Janet F. King, James R. Harper, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Appellant brings this appeal pursuant to 18 U.S.C. § 3742(a)(2), contending that the district court incorrectly applied the Sentencing Guidelines. Specifically, Goolsby contends that the district court erred in applying the criminal history multiple under U.S.S.G. § 4A1.1(d). We affirm.

## FACTS

The facts in this case are not in dispute. On February 6, 1989, appellant escaped from a federal half-way house; appellant remained in a fugitive status until he was arrested on March 21, 1989. Appellant pled guilty to the charge of escape, 18 U.S.C. § 751(a), and was sentenced to a twenty-eight month term of imprisonment to be followed by two years of supervised release.

Appellant's sentence was calculated as follows: The court determined appellant's total offense level to be 11, (base level of 13 per U.S.S.G. § 2P1.1(a)(1), minus 2 for acceptance of responsibility per § 3E1.1(a)). Pursuant to U.S.S.G. § 4A1.1, the district court determined appellant's criminal history score to be 11; three points for each of three prior felony convictions plus 2 points for committing the instant offense while under a criminal justice sentence. Appellant objects to the two additional criminal history points scored pursuant to § 4A1.1(d).[1] A criminal history score of 11 equates to criminal history Category V. Without the additional 2 points, appellant's criminal history score would have fallen in Category IV. Appellant argues on appeal that the Sentencing Commission did not intend § 4A1.1(d) to apply to the offense of escape as the conduct embraced by the 2 point criminal history multiple has been considered in the offense level under § 2P1.1(a)(1). Appellant asserts that the guidelines do not contemplate this kind of double counting.

## DISCUSSION

This is an issue of first impression in this circuit. However, every other circuit court that has considered this question has re-

---

1. This section provides: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

jected appellant's contention.[2] Because we generally agree with the reasoning advanced by the other circuit courts, we hold that it is proper for a district court to apply the 2 point criminal history factor when sentencing an offender for the crime of escape.

Interpretation of the Sentencing Guidelines is similar to statutory interpretation and is subject to de novo review on appeal. *United States v. Williams*, 891 F.2d 212, 214 (9th Cir.1989). *Cf. United States v. Jones*, 899 F.2d 1097, 1099–1100 (11th Cir. 1990) (conducting de novo review of guideline application). The applicable guidelines and accompanying commentary list no exception for escapees. In fact, § 4A1.1(d) expressly includes escapees. In those instances where the Commission intended to except an otherwise applicable element from increasing a sentence, the Commission's intent is expressly stated. *See, e.g.*, § 3A1.1, Vulnerable Victim, Application Note 2 (no victim related adjustment if offense guideline specifically incorporates factor); § 3B1.3, Abuse of Position of Trust of Use of Special Skill, Application Note 1 (adjustment not applicable to embezzlement by ordinary bank teller); § 3C1.1, Willfully Obstructing or Impeding Proceedings, Application Note 4 (generally not applicable to crimes of contempt, obstruction of justice, perjury, etc.). We are reluctant to fashion an exception since the Commission has demonstrated its ability to do so in those areas it has deemed an exception to be appropriate. In a publication entitled "Questions Most Frequently Asked About The Sentencing Guidelines," Question 22 (Vol. III, March 1, 1990), the Commission's Training Staff opined that an offender who escapes while under a crimi-

nal justice sentence receives three criminal history points under §§ 4A1.1(d) and (e).[3]

This explains the operation of § 4A1.1(d) in the typical case; however, the above justification is not altogether satisfactory as from the escapee's perspective the factors used to increase his criminal history category are required elements for the crime of escape itself. It is important to recognize that § 4A1.1(d) does not operate to enhance an offender's offense level, instead, it is a factor in calculating the offender's criminal history category. This distinction is important as each calculation concerns a conceptually separate notion related to sentencing. The offender's total offense level reflects the seriousness of the offense of conviction adjusted for relevant conduct. *United States v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir.1989). *See* U.S. S.G. §§ 1B1.1(a)-(e). An offender's criminal history score "evaluates the need to increase his sentence incrementally to deter him from further criminal activity." *Scroggins*, 880 F.2d at 1210. *See* U.S.S.G. § 4A1.3 (permitting upward or downward departure if offender's criminal history category under-represents or over-represents likelihood offender will commit future crimes); *United States v. Jackson*, 883 F.2d 1007, 1008–09 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 747, 107 L.Ed.2d 764, (1990) (discussing relationship in context of departure under § 4A1.3). In fashioning the § 4A1.1(d) factor, the Sentencing Commission determined that offenders who committed crimes while under a criminal justice sentence are more likely to commit future crimes. The purpose of this factor is to "implement[ ] one measure of recency." § 4A1.1, Background.

Another appellant in a similar case put the argument succinctly, "escape is not

---

**2.** *See United States v. Jimenez*, 897 F.2d 286 (7th Cir.1990); *United States v. Bigelow*, 897 F.2d 160 (5th Cir.1990); *United States v. Carroll*, 893 F.2d 1502 (6th Cir.1990); *United States v. Wright*, 891 F.2d 209, 211–12 (9th Cir.1989); *United States v. Medeiros*, 884 F.2d 75, 79–80 (3rd Cir.1989); *United States v. Goldbaum*, 879 F.2d 811 (10th Cir.1989). *But see United States v. Bell*, 716 F.Supp. 1207, 1209–12 (D.Minn.1989); *United States v. Clark*, 711 F.Supp. 736, 737 (S.D.N.Y. 1989).

**3.** The cases cited, *supra* note 2, involved whether the factors under both subsections (d) and (e) are applicable to an escapee. When sentencing Goolsby, the district court upheld defendant's objection to application of § 4A1.1(e) and declined to include the one point factor. The additional point is of no consequence to appellant's sentence as a criminal history score of 12 also falls in Category V. Since the government did not appeal, however, we need not consider the applicability of subsection (e).

made worse by being committed while in custody. It is made possible by being ... in custody." *Goldbaum,* 879 F.2d at 813. However, what Goldbaum and appellant here fail to recognize is that § 2P1.1 is applicable to both the crime of escape and assisting escape. The combined effect of the offense guideline and the criminal history factors is to sentence an escapee to a greater term of imprisonment than an outside person who assists the prisoner to escape. It would not be impermissible for the Commission to establish one offense level for the crimes of escape, or instigating or assisting escape and then enhance the offense level in the case where the crime is committed by one who is incarcerated. The challenged system achieves the same result. Considering the application notes, the background commentary and all the other available information, it is reasonable to conclude that the Commission set the offense level at a lower number recognizing that the criminal history score would increase the sentence for those who committed their offense while under a criminal justice sentence. Thus, contrary to Goldbaum's conclusion, the crime of escape is in fact made worse by being committed in custody.

Additionally, we note that § 4A1.1 does not apply to every escape. Section 2P1.1 applies to escapes from pretrial custody as well as from a criminal justice sentence. However, § 4A1.1(d) applies only if the escape is from a criminal justice sentence. It is not unreasonable to conclude the Sentencing Commission determined that if an offender escapes from confinement imposed by sentence, that offender should be punished more severely than if he had escaped from some form of pretrial confinement.

We conclude, therefore, that the district court correctly applied U.S.S.G. § 4A1.1(d) to appellant's escape conviction. Sections 2P1.1 and 4A1.1(d) combine to effect rational sentences under a variety of factual circumstances. Accordingly, the defendant's sentence is AFFIRMED.