**UNITED STATES of America,
Appellee,**

v.

**Abdel Ghani MESKINI, also known
as Eduardo Rocha, Defendant,**

**Mokhtar Haouari, Defendant–
Appellant.**

Docket No. 02–1067.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 26, 2002.

Decided Jan. 27, 2003.

Martin G. Goldberg, Franklin Square, NY, for Defendant–Appellant.

James B. Comey, United States Attorney, Southern District of New York (Robin Lisa Baker, Joseph F. Bianco, and Andrew C. McCarthy, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

Before: WALKER, Chief Judge, LEVAL and CALABRESI, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

The defendant-appellant Mokhtar Haouari was convicted after a jury trial in the United States District Court for the Southern District of New York (John F. Keenan, *Judge* ) of conspiracy to provide material support to a terrorist act and of four counts of fraud. This appeal presents an issue of first impression in the federal courts: whether the terrorism guideline, § 3A1.4 of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), impermissibly double counts by increasing both the offense level and the criminal history category for a felony involving or intending to promote an act of terrorism. We hold that this double counting is permissible because Congress has the power to prescribe a sentencing formula that accounts for the same factor more than once. The language of § 3A1.4 plainly manifests the intent of both Congress and the Sentencing Commission to account for an act of terrorism in calculating both the offense level and the criminal history category. Haouari's other claims are without merit. Accordingly, we affirm the conviction and the sentence imposed by the district court.

## BACKGROUND

The evidence at trial established that, in 1999, defendant-appellant Mokhtar Haouari conspired with Ahmed Ressam and Abdelghani Meskini to support Ressam's plan to bomb Los Angeles International Airport during millennium celebrations in December 1999. Ressam and Haouari discussed the importance of jihad against the United States and the merits of terrorist bombings in the United States. Ressam informed Haouari that he had been trained in terrorist tactics in Afghanistan and that he would be going to America for "dangerous business." At Ressam's request, Haouari recruited Meskini, Haouari's partner in several previous fraud schemes, to assist Ressam after Ressam's arrival in Seattle from Canada, and coordinated some of the details of their meeting, including, for example, providing Ressam with money and a phony driver's license,

and conveying to Meskini the name "Reda" that Ressam would be using. Haouari arranged for passports and visas to assist Ressam's and Meskini's escape from the United States to Algeria, Pakistan, and Afghanistan. The plot was uncovered when authorities arrested Ressam at the Canadian border on December 14, 1999, in a car containing high explosives. Following his conviction in the District Court for the Central District of California, Ressam cooperated and testified against Haouari. Meskini pleaded guilty to the indictment in this case on March 7, 2001 and also testified against Haouari. On July 13, 2001, a jury found Haouari guilty of conspiracy to provide material support to a terrorist act, 18 U.S.C. § 371, and of four counts of fraud, 18 U.S.C. §§ 371, 1028(2) and (7), 1029(a)(2). On January 17, 2002, the district court sentenced Haouari principally to 288 months in prison.

### DISCUSSION

Haouari contends that § 3A1.4 of the Guidelines violated his right to due process by impermissibly double counting the same criminal act, once for the offense level and once for the criminal history category. We find no error.

Sentencing Guideline § 3A1.4 directs the following calculations:

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Following this guideline, the district court added twelve points to Haouari's offense level, bringing the total to 33, and boosted his criminal history category from I to VI. The resulting range was 235 to 293 months. The district court sentenced Haouari to 288 months' imprisonment, at the higher end of the range, because of the crime's "grave risk to the well-being and safety of the American people."

■ On questions of the interpretation of the Sentencing Guidelines, our review is de novo. United States v. Pedragh, 225 F.3d 240, 242 (2d Cir.2000). "To sustain a federal sentencing statute against a due process ... challenge, courts need only find that 'Congress had a rational basis for its choice of penalties.'" United States v. Proyect, 989 F.2d 84, 88 (2d Cir.1993) (quoting Chapman v. United States, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)). This court has repeatedly recognized that "it is within the Sentencing Commission's and Congress's prerogative to adopt double counting." United States v. Aska, 314 F.3d 75, 78 (2d Cir.2002); see also Pedragh, 225 F.3d at 247; United States v. Torres–Echavarria, 129 F.3d 692, 699 (2d Cir.1997). "With very few limitations, Congress is free to prescribe any sentence that in its view reflects the seriousness of the underlying offense and the characteristics of the offender." Torres–Echavarria, 129 F.3d at 699. Problems of double counting arise normally from the conduct of courts, rather than legislatures. Id. ("Impermissible 'double counting' is the judicial augmentation of a defendant's sentence in contravention of the applicable statute or Sentencing Guideline.") (emphasis in original). As long as the court does not augment a sentence " 'in contravention of the applicable statute or Sentencing Guideline,' no forbidden double counting occurs." Pedragh, 225 F.3d at 243 (citing Torres–Echavarria, 129 F.3d at 699). There was no such contravention here. The wording of § 3A1.4 could not be clearer: It directs

courts to increase both the offense level and the criminal history category based on a single crime involving terrorism.

■ Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time. Thus, the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category.

Haouari argues that because § 3A1.4(b) automatically boosts the criminal history to Category VI for a single act of terrorism, a first-time offender with no prior criminal behavior would unfairly receive a sentence roughly equivalent to that of a life-long terrorist. Haouari argues that the double counting was impermissible in his case because he has no prior convictions in this country, and he thus attempts to distinguish his case from our precedents allowing a factor to be counted again in the criminal history category. Congress and the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under § 3A1.4(b), because even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation. A judge determining that § 3A1.4(b) over-represents "the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes" always has the discretion under § 4A1.3 to depart downward in sentencing. U.S.S.G. § 4A1.3. Considering the serious dangers posed by all forms of terrorism, the Guidelines are in no way irrational in setting the default for criminal history at a very high

level, with downward departures permitted in exceptional cases.

In any event, Haouari plainly does not present such an exceptional case, because he has an extensive history of crime. At trial, Haouari conceded that he was a long-time criminal, "a semi-retired con man, . . . a two-bit thief," and the court record indicates an extensive history of fraud. Many of these fraudulent schemes were similar to ones that Haouari employed to support Ressam's terrorist plot to blow up Los Angeles International Airport. Coming from Haouari, his complaint that § 3A1.4(b) is unfair to defendants without a criminal history rings particularly hollow.

■ Haouari's remaining claims are without merit. The evidence at trial was more than sufficient to justify a jury charge of conscious avoidance and to convict Haouari of providing material support to a terrorist act. The district court provided a summary of the ample evidence that, at the very least, Haouari "deliberately closed his eyes" to Ressam's terrorist plans. *United States v. Haouari*, No. S4 00 Cr 15, 2001 WL 1154714, *2–*3 (S.D.N.Y. Sept.28, 2001). Neither did the court's conscious avoidance charge impermissibly shift the burden against Haouari. The charge did not require Haouari to prove that he actually believed that Ressam was not going to attempt a terrorist attack. In fact, the court's wording benefitted Haouari by providing an additional basis for acquittal, clarifying that even if Haouari "was aware of a high probability that Ressam was going to attempt" an act of terror, the jury could still acquit if he "actually believed that Ressam was not going to attempt such an act." The charge was neither erroneous nor prejudicial. *See United States v. Pujana–Mena*, 949 F.2d 24, 27 (2d Cir.1991).

Finally, Haouari's trial counsel did not provide ineffective assistance. Haouari contends that his lawyer should have placed in evidence Meskini's intercepted statements, but parts of those statements were patently false, and they were more damaging than helpful to Haouari because they more deeply implicated Haouari in the terrorist conspiracy. Meskini's statements to *Washington Post* reporter Lorraine Adams similarly would have been unhelpful, because, even taken at face value, those statements do not establish that Meskini lied about Haouari's involvement, and Meskini admitted at trial that he had lied to Adams about other aspects of the case. Counsel also did not err in failing to object to Meskini's testimony that he had overheard Haouari, in the background of a telephone conversation between Meskini and another co-conspirator, say, "Tell him that the fire is on and it's coming." The statement was not hearsay, because it was admissible as a statement by a party opponent (Haouari) under Fed.R.Evid. 801(d)(2)(A). Thus, counsel's performance did not fall below an objective standard of reasonableness, nor did it prejudice Haouari. *See Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## CONCLUSION

For the foregoing reasons, the district court's judgment against Haouari is AFFIRMED.