10-3648-cr
United States of America v. Mamdouh Mahmud Salim

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: March 27, 2012     Decided: August 24, 2012)

Docket No. 10-3648-cr

--------------------------------------------------------x

UNITED STATES OF AMERICA,

Appellee,

-- v. --

MAMDOUH MAHMUD SALIM,

Defendant-Appellant.

--------------------------------------------------------x

B e f o r e :  WALKER and LYNCH, Circuit Judges.[1]

Appeal from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, Judge) resentencing appellant for attacking a correctional officer. Appellant challenges his resentence, which he attended by videoconference, primarily on the ground that his right to be physically present in court was violated.  We agree with appellant that the government has not satisfied its burden of proving that he waived his right to be present and that the

---

[1] Because Judge Straub, originally assigned to this panel, is recused, the remaining members of the panel decided this appeal in accordance with Second Circuit Internal Operating Procedure E.

district court erred in finding a valid waiver.  But this error is subject to plain error review and, in the circumstances of this case, appellant was not prejudiced.  We also reject appellant's arguments that his resentence was unreasonable.  We therefore AFFIRM the judgment of the district court.

BRUCE R. BRYAN, Syracuse, NY, for Defendant-Appellant.

ANDREW D. GOLDSTEIN, Assistant U.S. Attorney (Iris Lan, Assistant U.S. Attorney, on the brief), for Preet Bharara, U.S. Attorney for the Southern District of New York, New York, NY, for United States-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Defendant-Appellant Mamdouh Mahmud Salim appeals from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, Judge) resentencing him for attacking a correctional officer while an inmate at the Metropolitan Correctional Center (the "MCC").  On appeal, Salim argues primarily that his resentencing by videoconference constituted a violation of his right to be physically present. We agree with Salim that the government has not satisfied its burden of proving that he waived his right to be present and that the district court erred in finding a valid waiver.  But this error is subject to plain error review and, in these circumstances, Salim was not prejudiced.  We also reject Salim's

2

arguments that his resentence was unreasonable.  We therefore AFFIRM the judgment of the district court.

**BACKGROUND**

**I.   Factual Background**

The facts of this case are fully set forth in this Court's prior opinion in United States v. Salim, 549 F.3d 67 (2d Cir. 2008).  For present purposes, they may be summarized as follows:

On November 1, 2000, Salim was incarcerated at the MCC awaiting trial upon the indictment in United States v. Usama Bin Laden, et al., S9 98 Cr. 1023 (LBS), in which numerous alleged al Qaeda members were charged with a conspiracy to kill Americans. On that day, Salim and his cellmate (and co-defendant in the terrorism case) Kholfan Khamis Mohamed planned to take a guard's keys so that Salim could attack his lawyers in an attorney-inmate meeting room.  Their goal was to force Salim's attorneys to withdraw their representation so that District Judge Sand, who was presiding over the terrorism case and previously had denied Salim's repeated requests for new lawyers, would have to grant substitute counsel.

Salim began to put the plan into effect when, while meeting with his lawyers in one of the meeting rooms, he asked to go back to his cell to retrieve certain materials.  As Corrections Officer Louis Pepe escorted him to his cell, Salim began singing -- a prearranged signal to Mohamed, who was waiting in the cell.

3

When Salim and Officer Pepe arrived at the cell, Mohamed grabbed Officer Pepe's walkie-talkie and Salim knocked Officer Pepe down, sprayed hot sauce in his eyes, and stabbed him in the left eye with the end of a sharpened plastic comb. Having taken Officer Pepe's keys, Salim and Mohamed locked Officer Pepe in the cell and Salim headed back towards the meeting room where his lawyers waited. He was subdued by other guards en route.

Officer Pepe was severely injured. He lost his left eye, incurred reduced vision in his right eye, and suffered brain damage that left his right side partially paralyzed and interfered with other normal functions, including his ability to speak and write.

**II. Procedural Background**

Salim's attack on Officer Pepe resulted in numerous additional charges, which were indicted separately from the terrorism case and assigned to District Judge Batts. On April 3, 2002, those charges were resolved when Salim pled guilty to conspiracy to murder, and attempted murder of, a federal official, see 18 U.S.C. §§ 1114, 1117, pursuant to a plea agreement without any Sentencing Guidelines understanding.

After a Fatico hearing and briefing, the district court issued an opinion containing findings of fact and legal conclusions. See United States v. Salim, 287 F. Supp. 2d 250 (S.D.N.Y. 2003). Among other rulings, the district court

4

rejected the government's argument for a terrorism enhancement. The government believed this enhancement was warranted because Salim had attempted to coerce Judge Sand into appointing substitute counsel. The district court, however, concluded that the terrorism enhancement applied only to transnational conduct whereas the prison assault was purely domestic. See id. at 353-54. In a subsequent order, the district court agreed with the government that an obstruction of justice enhancement was warranted based on Salim's repeated denials at the Fatico hearing that the motive for his attack was to force Judge Sand to appoint new counsel.

The initial sentencing took place on May 3, 2004. Although the Guidelines range was 262 to 327 months, the district court departed upward and imposed a 384-month sentence due to factors including (1) the "unusually cruel, brutal . . . and . . . gratuitous infliction of injury," Appendix ("App.") 480, (2) that the attack was part of a broader scheme to attack Salim's attorneys, and (3) that Salim had secured Mohamed's help through religious and psychological coercion.

Salim appealed his sentence. While that appeal was pending, the Supreme Court decided United States v. Booker, 534 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, and our Court thereafter decided United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), which, in light of Booker,

5

provided for remand to "permit[] the sentencing judge to determine whether to resentence, . . . and if so, to resentence," id. at 117 (emphasis omitted).  We remanded Salim's case to the district court pursuant to Crosby.  On remand, the district court declined to resentence Salim after concluding that it would have imposed the same sentence under an advisory Guidelines regime.

Salim again appealed, arguing that the district court had erroneously imposed various enhancements, including the obstruction enhancement.  The government cross-appealed from the district court's decision not to impose a terrorism enhancement. We rejected Salim's arguments but agreed with the government that the terrorism enhancement does not require transnational conduct and thus should apply in this case.  Salim, 549 F.3d at 73-76, 78.  We vacated the sentence and again remanded.  Id. at 79.

On remand, Salim's counsel argued that, for various reasons, Salim's sentence either should be reduced or should stay the same.  The government argued for a life sentence, which was the Guidelines-recommended sentence in light of the now-applicable terrorism enhancement.  In an opinion issued before resentencing, the district court rejected Salim's arguments and concluded that a life sentence was appropriate.  Specifically, the district court stated that its reasons for departing upward in the original sentence -- most prominently, the severity and purpose of the crime -- prevented it from departing below the Guidelines

6

on resentencing.  It also noted that its prior "determination not to impose a life sentence was based on [its] erroneous legal analysis [regarding the terrorism enhancement] and had nothing to do with the 'nature and circumstances of the offense' or the 'history and characteristics of the defendant.'"  Special Appendix 239-40 (quoting 18 U.S.C. § 3553(a)(1)).

Prior to resentencing, Salim's lawyer sent the district court a letter that stated that he had recently spoken with his client and that Salim did not wish to be present in court for the resentencing.  "On [Salim's] behalf, [counsel] request[ed] that [Salim] be permitted to waive his presence at [re]sentencing pursuant to Rule 43(c)(1)(B) of the Federal Rules of Criminal Procedure, or, alternatively, that the [re]sentencing proceed via videoconferencing."  App. 1104.  The district court endorsed the letter and ordered that Salim's "presence in person [was] waived for re-sentencing in that a video hook up shall be arranged by the Government."  Id.

At the resentencing on August 31, 2010, Salim's counsel was present and Salim attended by videoconference.[2]  At the outset, the district court had the following colloquy with Salim:

THE COURT:    Mr. Salim is not present in person in

---

[2]    On appeal, Salim complains that there were technical difficulties with the videoconference link.  Although there were some difficulties early on and periodically thereafter, they did not interfere with the actual proceedings or with Salim's ability to communicate with the district court.

7

the courtroom today.

Mr. Salim, I wish to confirm that it is your wish to waive your appearance in this courtroom pursuant to Rule 43(c)(1)(B) of the Federal Rules of Criminal Procedure. Is that correct?

THE DEFENDANT: Your Honor, do you want me to answer this question?

THE COURT: Yes.

THE DEFENDANT: Your Honor, when they brought me in and they moved me from one prison to another, there are guards. And the officer spit on me and beat me, and that's why I refuse to come over.

THE COURT: So you do not wish to waive your presence and you would prefer to be here?

THE DEFENDANT: No, your Honor. I don't want to come to the Court. So I'm not going to be subjected to being beaten up and to be spit on.

THE COURT: So then you waive your presence here this afternoon?

THE DEFENDANT: Therefore, your Honor, I am waiving my right to appear before you.

THE COURT: Thank you, Mr. Salim.

Id. at 1114-15.

After hearing statements from Officer Pepe, from Salim and his lawyer, and from the government, the district court imposed a life sentence as recommended by the Guidelines. Salim appeals.

8

**DISCUSSION**

**I.   The Right to Be Present at Resentencing**

Salim argues, inter alia, that his attendance at resentencing by videoconference violated his right to be physically present and that his waiver of physical presence was not voluntary because it was premised on his fear of abuse by correctional officers.

**A.   Applicable Law**

Under both the Constitution and Federal Rule of Criminal Procedure 43(a)(3), a criminal defendant has the right to be present during sentencing.  This right extends to resentencing. United States v. Arrous, 320 F.3d 355, 359 (2d Cir. 2003) ("[W]here the district court re-enters a sentence which has been vacated or set aside by the Court of Appeals . . . , a defendant has a constitutional right to be present, because technically a new sentence is being imposed in place of the vacated sentence.").

Although it is an issue of first impression in this circuit, every federal appellate court to have considered the question has held that a defendant's right to be present requires physical presence and is not satisfied by participation through videoconference.  See United States v. Williams, 641 F.3d 758, 764-65 (6th Cir. 2011); United States v. Torres-Palma, 290 F.3d 1244, 1245-48 (10th Cir. 2002); United States v. Lawrence, 248

9

F.3d 300, 301, 303-04 (4th Cir. 2001); United States v. Navarro, 169 F.3d 228, 235-39 (5th Cir. 1999), cert. denied, 528 U.S. 845 (1999). But see Navarro, 169 F.3d at 239-42 (Politz, J., dissenting) (opining that the defendant's sentencing by videoconference did not violate his right to be present). Because both parties argue from this premise, we assume without deciding that "presence" requires physical presence and is not satisfied by videoconference.

In a non-capital case, a defendant may waive his right to be present as long as that waiver is knowing and voluntary. See Fed. R. Crim. P. 43(c)(1)(B); United States v. Mera, 921 F.2d 18, 20 (2d Cir. 1990) (per curiam). "The government bears the burden of demonstrating by a preponderance of the evidence that a defendant waived his constitutional rights." United States v. Lynch, 92 F.3d 62, 65 (2d Cir. 1996). We have held that the erroneous denial of a defendant's right to be present during resentencing is grounds for reversal only if the defendant suffered prejudice as a result of the deprivation. See United States v. DeMott, 513 F.3d 55, 58 (2d Cir. 2008); Arrous, 320 F.3d at 361-62; United States v. Pagan, 785 F.2d 378, 380-81 (2d Cir. 1986). But see Torres-Palma, 290 F.3d at 1248 (holding that a violation of the right to be present at sentencing "is per se prejudicial").

We therefore turn to whether the government has proven, as the district court found, that Salim knowingly and voluntarily

waived his right to be present for resentencing.

**B.   Salim's Purported Waiver of Presence**

Salim contends that his waiver of presence was not voluntary because it was premised on his fear of physical abuse by correctional officers.  The government makes two arguments in response: first, that Salim's lawyer properly waived Salim's presence through counsel's letter to the district court before resentencing; and second, that Salim reiterated and confirmed his waiver directly to the district court at the outset of the resentencing proceedings.

**1.   Defense Counsel's Purported Waiver by Letter**

"Although it is certainly preferable that the waiver [of presence] come from the defendant directly, there is no constitutional requirement to that effect."  Polizzi v. United States, 926 F.2d 1311, 1322 (2d Cir. 1991).  A defendant's lawyer may waive presence on the defendant's behalf.  But a defendant's waiver through counsel, like all waivers of constitutional rights, still must be knowing and voluntary on the part of the defendant.  See id. at 1313 (describing a procedure wherein the district court inquired of defense counsel whether, inter alia, "the defendant understood his right to be present and whether he was voluntarily and knowingly waiving that right, affirmatively requesting that the trial proceed in his absence and giving up any claim" of prejudice).

The government has not satisfied its burden of proving that Salim, through his lawyer's letter, knowingly and voluntarily

11

waived his right to be present at resentencing. The letter stated only that counsel had "recently spoken to" Salim and requested, on Salim's behalf, that Salim be allowed "to waive his presence at [re]sentencing . . . or, alternatively, that the [re]sentencing proceed via videoconferencing." App. 1104. These words, without more, do not speak to knowledge or voluntariness, and the government cannot prove –– and the district court could not have found –– an adequate waiver by relying on them.

### 2. Salim's Purported Waiver over Videoconference

As resentencing commenced, the district court appropriately stated to Salim over the videoconference link that it "wish[ed] to confirm that it [was Salim's] wish to waive [his] appearance in th[e] courtroom," id. at 1114. See United States v. Tureseo, 566 F.3d 77, 83 (2d Cir. 2009) ("To establish waiver, the District Court must conduct a record inquiry to determine whether the defendant's absence was 'knowing and voluntary' . . . ."). Salim responded that he did indeed waive his presence, but that he did so because at least one correctional officer allegedly had "spit on" and "beat[en]" him the last time Salim had been moved. App. 1114. He claimed that he did not "want to come to the Court" because he did not want "to be subjected to being beaten up and . . . spit on" again. Id. The district court accepted this waiver and proceeded with resentencing.

Here again, the government has not satisfied its burden of proving that Salim's waiver was voluntary. To be voluntary, a waiver of a constitutional right must be "the product of a free

12

and deliberate choice rather than intimidation, coercion, or deception." Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010) (internal quotation marks omitted). Salim's waiver allegedly resulted from fears of intimidation and physical abuse. The government has not established that Salim was lying about the abuse, that the fear he expressed was not reasonably grounded, or that he would not have attended resentencing even if his safety could be reasonably assured.

Nor did the district court undertake to assess the reasonableness of Salim's alleged fears or determine whether assurances could have been made that would assuage those fears. In comparable situations, we and the Supreme Court have held that a careful judicial inquiry is required before a court may accept an in-court waiver of constitutional procedural rights. See Faretta v. California, 422 U.S. 806, 814 (1975) (right to counsel and the "correlative right to dispense with a lawyer's help" (internal quotation marks omitted)); Boykin v. Alabama, 395 U.S. 238, 243-44 (1969) (rights against self-incrimination, to trial, and to confront one's accusers, which may be waived by entering a guilty plea); United States v. Curcio, 680 F.2d 881, 889-90 (2d Cir. 1982) (right to conflict-free counsel). The government urges that the district court, which observed Salim during this colloquy, implicitly rejected Salim's claimed fears of abuse as incredible. It is true that the district court was in a position to assess Salim's credibility and, if appropriate, reject his explanation for his waiver. But the district court made no

13

findings to that effect.  The government's argument therefore is speculative and we cannot uphold the district court's acceptance of Salim's waiver on this basis.

### C.    Prejudice Analysis

Our analysis does not end with our determination that the government has not met its burden of proving that Salim knowingly and voluntarily waived his right to be physically present at resentencing.  The district court's error in finding a valid waiver warrants reversal and remand only if Salim suffered prejudice as a result.  See DeMott, 513 F.3d at 58; Arrous, 320 F.3d at 361-62; Pagan, 785 F.2d at 380-81.

When a criminal defendant does not preserve an issue below by objecting, we apply a plain error standard instead of a harmless error one.  See, e.g., United States v. Garcia, 587 F.3d 509, 515 & n.2 (2d Cir. 2009) (Confrontation Clause context); United States v. Vaval, 404 F.3d 144, 151 (2d Cir. 2005) (Rule 11 context).  We therefore review the district court's acceptance of Salim's waiver of presence at resentencing for plain error.  See, e.g., United States v. Jones, 662 F.3d 1018, 1027 (8th Cir. 2011); United States v. Henderson, 626 F.3d 326, 343 (6th Cir. 2010); United States v. Holman, 289 F. App'x 680, 681 (5th Cir. 2008); United States v. Williams, 241 F. App'x 681, 684 (11th Cir. 2007); United States v. Terrazas, 190 F. App'x 543, 548-49 (9th Cir. 2006); United States v. Rhodes, 32 F.3d 867, 874 (4th Cir. 1994).

As explained recently by the Supreme Court, when reviewing

14

for plain error,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

United States v. Marcus, --- U.S. ----, 130 S. Ct. 2159, 2164 (2010) (brackets and internal quotation marks omitted). The defendant bears "the burden of establishing entitlement to relief for plain error." United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004).

Even assuming that Salim has satisfied the first two prongs of plain error review -- by showing that there was an error and that it was clear or obvious -- he has not met the third or fourth. Salim has not proven that his presence would have affected the outcome of his resentencing. Cf. DeMott, 513 F.3d at 58 (in harmless error review of erroneous deprivation of right to be present at resentencing, violation was harmless if, inter alia, the "defendant's presence would not have affected the outcome" of the resentencing). Before the resentencing, the district court issued an opinion in which it found that the circumstances of Salim's crime "preclude[d] any finding in favor of the Defendant for a non-guidelines sentence," App. 1101, i.e., a sentence of less than life imprisonment. The district court also clarified that its prior "determination not to impose a life sentence was based on [its] erroneous legal analysis and had

15

nothing to do with the 'nature and circumstances of the offense' or the 'history and characteristics of the defendant,'" id. at 1100-01 -- the sort of considerations that sometimes weigh in favor of a below-Guidelines sentence under 18 U.S.C. § 3553(a)(1). And, during the resentencing, by virtue of the live videoconference link, Salim was not prevented from making any statement he chose to the district court. Against these considerations, Salim has offered no explanation for why his physical presence might have led to a resentence of less than life imprisonment.

Salim protests that the district court did not allow him to read on the record a ten-page "motion" (alternatively called a "statement"), App. 1123-24, that he had faxed to the district court on the day of resentencing. Defendants have the right to speak before the imposition of sentence. Fed. R. Crim. P. 32(i)(4)(A). Even on the dubious assumption that the district court's decision not to hear Salim's motion was tied to his lack of physical presence, Salim's right to speak was not violated here. The district court did not err in stating that motions were to be made by counsel and that, in any case, it would not rule on any motions made at this late date. The district court asked Salim what he "ha[d] to say in relation to sentencing," App. 1124, and Salim spoke, as was his right. Later, the district court offered Salim's counsel a break to consider whether he wished to raise in his attorney statement any of the points from Salim's motion. Counsel declined the break and made

16

a statement that "incorporate[d]" the motion, id. at 1128.  In these circumstances, Salim's right to speak before the imposition of resentence was not violated.

Nor has Salim proven the fourth plain error factor -- that the district court's acceptance of his waiver of presence seriously affected the fairness, integrity or public reputation of judicial proceedings.  An error that does not affect the outcome of proceedings typically does not meet this prong.  Marcus, 130 S. Ct. at 2166.  This is because "the plain-error exception to the contemporaneous-objection rule is to be used sparingly," "to correct only particularly egregious errors" when "a miscarriage of justice would otherwise result."  United States v. Young, 470 U.S. 1, 15 (1985) (internal quotation marks omitted).  As discussed earlier, Salim has not explained why his absence might have altered his resentence, nor has he demonstrated that any error in his resentencing was so egregious as to warrant relief on plain error review.

In sum, we see no basis for concluding that the acceptance of Salim's waiver of presence, while erroneous on this record, warrants reversal under a plain error standard.

**II.  The Reasonableness of Salim's Resentence**

Salim makes several challenges to the reasonableness of his resentence.  "We are constrained to review sentences for reasonableness, and we do so under a deferential abuse-of-discretion standard.  We examine sentences for both substantive

and procedural reasonableness, setting aside a sentence as substantively unreasonable only in those special cases where the range of permissible decisions does not encompass the [d]istrict [c]ourt's determination." United States v. Diamreyan, 684 F.3d 305, 308 (2d Cir. 2012) (internal quotation marks and citations omitted). "A sentence is procedurally unreasonable when[] the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation." Id.

Salim argues that his resentence was procedurally unreasonable because the district court imposed a longer sentence at resentencing than it had imposed originally. The district court originally imposed a sentence of 32 years' imprisonment. At that point, in Salim's view, the district court knew everything about his case that it knew at the resentencing. Furthermore, the district court did not give the original 32-year sentence because of adherence to then-mandatory Guidelines; it departed upward from those Guidelines, so the original sentence must have been what the district court thought was right under the circumstances. Therefore, Salim argues, the district court could not have imposed a heavier sentence on remand, when the Guidelines were no longer mandatory, and when all that had

18

changed was the Guidelines recommendation, unless the district court took the Guidelines to be mandatory or at least presumptively correct. Either of those presumptions would constitute an abuse of discretion. See United States v. Dorvee, 616 F.3d 174, 182-83 (2d Cir. 2010). Furthermore, Salim argues, the fact that our Court had instructed the district court that the terrorism enhancement applied cannot explain the increased sentence on remand, as that determination was based simply on the meaning of the Guidelines, and not on any disagreement with the district court's findings of fact; we did not, for example, reject the district court's fact-finding and conclude that Salim was actually engaged in a larger hostage-taking plot, rather than in an attempt to scare his attorneys into resigning and to force Judge Sand to appoint new counsel.

Salim's argument is unavailing, as the sentencing factors were different at the time of resentencing: the Guidelines recommendation, which is a factor that 18 U.S.C. § 3553(a) requires a judge to consider, had changed. If the Guidelines are a factor, then it must follow that in some cases they are the factor that tips the balance. After all, if a factor never makes a difference, it is a non-factor. Accordingly, we conclude that the district court's imposition of a life sentence at resentencing was not procedurally unreasonable.

Salim's challenge to the validity of the terrorism enhancement Guideline itself is similarly unavailing. He argues that the terrorism enhancement, like the child pornography

19

Guidelines, is not entitled to the respect or deference of a sentencing judge because the enhancement was not the product of empirical "research." See Dorvee, 616 F.3d at 184-85 (noting, inter alia, that "the [Sentencing] Commission did not use [its typical] empirical approach in formulating the Guidelines for child pornography," but "[i]nstead, at the direction of Congress, . . . amended the Guidelines . . . several times since their introduction in 1987, each time recommending harsher penalties"). In Dorvee, we analogized to the Supreme Court's instruction, in the context of crack-cocaine sentencing, that a judge is free to disagree with the substance of a Guidelines recommendation, and we held that it is not an abuse of discretion for a judge to disagree with the child pornography Guidelines, given their "irrationality" and questionable origins. See id. at 187-88. We have never held that a district court is required to reject an applicable Guideline. At most, the judge may give a non-Guidelines sentence where she disagrees with the weight the Guidelines assign to a factor.

Here, there is no indication that the district court disagreed with the terrorism enhancement, or thought it compelled (or established a presumption in favor of) a sentence that was greater than necessary to accomplish the purposes of sentencing set out in section 3553(a). Rather, the district court recognized expressly, in writing, that the Guidelines are advisory, stated the correct standard, and discussed at length, in terms of the statutory factors, why a life sentence was

20

appropriate.  While the district court did not directly reject Salim's argument that it ought to ignore the terrorism enhancement, we have never required judges to address every point raised, where, as here, the district court made clear its reasons for imposing a life sentence.  Accordingly, the district court did not abuse its discretion in considering the terrorism enhancement.

**CONCLUSION**

We have considered Salim's remaining arguments and find them to be without merit.  We therefore AFFIRM the judgment of the district court.