Because Defendant's offense satisfies both parts of 18 U.S.C. § 2332b(g)(5), the offense involves a "federal crime of terrorism," and the terrorism enhancement applies. See U.S.S.G. § 3A1.4(a) (2018).
B. Enhancement's Treatment of Criminal History
Nevertheless, as the Court held at sentencing, the enhancement's treatment of criminal history-automatically assigning to all terrorism defendants a criminal history category of VI-is inappropriate based on the seriousness of the crime, inappropriate based on assumptions about recidivism, and inappropriate as to this Defendant, warranting a downward departure.
1. Inappropriate Based on Seriousness of Crime
The Sentencing Guidelines are a remarkable system, developed over the course of decades to achieve "effective, fair sentencing" that serves the goals of honesty, reasonable uniformity, and proportionality. U.S.S.G. Part A Introduction and Authority (2018) at 2-3. The Guidelines "reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time...." See Rita v. United States, 551 U.S. 338, 350, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). They are not static, but continue to evolve under the stewardship of the Sentencing Commission. See U.S.S.G. Part A Introduction and Authority at 13 (describing Sentencing Commission's "ongoing responsibilities to monitor the guidelines" and to "submit to Congress appropriate modifications of the guidelines" given "application experience, as new criminal statutes are enacted, and as more is learned about what motivates and controls criminal behavior."). The Guidelines should be based, above all, on empirical data. See id. at 5 ("the guidelines represent an approach that begins with, and builds upon, empirical data."); see also Kimbrough v. United States, 552 U.S. 85, 108-09, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience....' "); Sameer Ahmed, Is History Repeating Itself? Sentencing Young American Muslims in the War on Terror, 126 Yale L.J. 1520, 1549-50 (2017) ("The legitimacy of the Guidelines is derived from the belief that they are based on reliable data and principles.").
Though the Guidelines are advisory, see United States v. Booker, 543 U.S. 220, 259-60, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a court must take them into account when sentencing, ids="5925862" index="31" url="https://cite.case.law/us/543/220/#p259">id. at 264, 125 S.Ct. 738, and must accurately calculate *1013 the guideline range, even if it ultimately sentences above or below that range, see United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir. 2006). In the normal course, a district court calculates the appropriate guideline range by determining the offense conduct and the corresponding base offense level, after considering any relevant offense characteristics from Chapter Two of the Guidelines. See U.S.S.G. § 1B1.1 (Application Instructions). The court then applies any applicable adjustments from Chapter Three and determines the defendant's criminal history category from Chapter Four of the Guidelines. Id. Using the offense level and the criminal history category, the court determines the guideline range. Id.; Sentencing Table. Finally, the court considers whether any specific offender characteristics or sentencing departures warrant consideration in imposing sentence. See U.S.S.G. § 1B1.1.
"The terrorism enhancement takes a wrecking ball to this carefully constructed edifice." See George D. Brown, Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts, 23 Cornell J.L. & Pub. Pol'y 517, 520 (2014). As discussed above, the terrorism enhancement both increases a terror defendant's offense level, and increases his or her criminal history category to the highest possible number (VI). U.S.S.G. § 3A1.4(a). The argument for doing so is presumably that terrorism is an extremely serious crime. See, e.g., United States v. Meskini, 319 F.3d 88, 92 (2d Cir.), cert. denied, 538 U.S. 1068, 123 S.Ct. 2240, 155 L.Ed.2d 1125 (2003) ("act of terrorism represents a particularly grave threat"). Of course it is. But it is the offense level that reflects the seriousness of a charged offense. See United States v. Martinez, 931 F.2d 851, 852 n.1 (11th Cir. 1991) ("The total offense level 'reflects the seriousness of the offense of conviction adjusted for relevant conduct' "); see United States v. Parker, 136 F.3d 653, 655 (9th Cir. 1998) (citing Martinez ).
A defendant's criminal history category reflects something different. See Martinez, 931 F.2d at 852 n.1 ("the distinction between the calculation of the offense level and the calculation of the criminal history category is important insofar as 'each calculation concerns a conceptually separate notion related to sentencing.' ") (quoting United States v. Goolsby, 908 F.2d 861, 863 (11th Cir. 1990) ). Criminal history " 'evaluates the need to increase [the offender's] sentence incrementally to deter him from further criminal activity.' " Id. (quoting United States v. Scroggins, 880 F.2d 1204, 1210 (11th Cir. 1989) ); see also Nichols v. United States, 511 U.S. 738, 751, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (Souter, J., concurring) ("Prior convictions ... serve under the Guidelines to place the defendant in one of six 'criminal history' categories; the greater the number of prior convictions, the higher the category.... the Guidelines seek to punish those who exhibit a pattern of 'criminal conduct.' "); U.S.S.G. Chapter Four, Criminal History and Criminal Livelihood, Part A - Criminal History Introductory Commentary ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment.... Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation."); see also United States Sentencing Commission, "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score, Jan. 4, 2005, available at https://www.ussc.gov/research/research-publications/comparison-federal-sentencing-guidelines-criminal-history-category-and-us-parole-commission-salient (last visited March 6, 2019) at 1-3 (goals for criminal history instrument are "to *1014 predict recidivism" and "reflect offender culpability" in the form of "harsher punishments for offenders with aggravated prior criminal backgrounds"). If terrorism sentences are too low, the Sentencing Commission can recommend increasing the offense level for those crimes. But automatically increasing a defendant's criminal history to reflect the seriousness of the charged offense is inappropriate, as it does not reflect-unlike every other offense-the seriousness of the defendant's previous criminal convictions.
2. Inappropriate Based on Recidivism
It is also inappropriate to automatically increase a defendant's criminal history based on unsubstantiated assumptions about recidivism. "The terrorism enhancement is not backed by any empirical evidence." See United States v. Jumaev, No. 12-cr-00033-JLK, slip op., 2018 WL 3490886, at *10, id. n.15 (D. Colo. July 18, 2018) (citing United States v. Salim, 690 F.3d 115, 126 (2d Cir. 2012) (district court not required to reject terrorism enhancement because it was allegedly not the product of empirical research, but "may give a non-Guidelines sentence where she disagrees with the weight the Guidelines assign to a factor.")). As James McLoughlin, Jr. noted in his article, "when U.S.S.G. section 3A1.4 was adopted, the number of [ ] anti-terrorism cases was tiny, so there could be no analysis of a statistically reliable group of defendants upon which to build a reliable Guideline." See McLoughlin at 112; see also id. at 115 ("[t]here is no published statistical data demonstrating that defendants convicted of violating 18 U.S.C. §§ 2339B, 2339C, or other anti-terrorism statutes ... are any more likely to be recidivists than any other first offenders. Nothing in the history of U.S.S.G. section 3A1.4 would indicate that any reliable data was used to determine if a person convicted of a material support offense is more likely to be a recidivist."); Ahmed at 1550 ("no statistically sound evidence was used") (citing McLoughlin)[6] ; see also Symposium, Convicted Terrorists: Sentencing Considerations and Their Policy Implications, 8 J. Nat'l Security L. & Pol'y 347, 361 (2016) (Hon. Gerald Bruce Judge Lee: "The guidelines are not based on any empirical research. There has been no study to determine how much time a terrorist should have").
Courts that have signed off on the terrorism enhancement's treatment of criminal history have done so by concluding:
Congress and the Sentencing Commission had a rational basis for concluding than an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time. Thus, the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category.
Meskini, 319 F.3d at 92 (emphasis added)[7] ; see also United States v. Jayyousi, 657 F.3d 1085, 1117-19 (11th Cir. 2011) ("[A]lthough *1015 recidivism ordinarily decreases with age, we have rejected this reasoning as a basis for a sentencing departure for certain classes of criminals, namely sex offenders. We also reject this reasoning here. 'Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation.' " (quoting Meskini, 319 F.3d at 92 )); United States v. Ressam. 679 F.3d 1069, 1091 (9th Cir. 2012) (quoting Jayyousi, which quoted Meskini ). But the court in Meskini cited no authority for its assertion that "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." See Meskini, 319 F.3d at 92. Repetition of that assertion might give it the ring of truth, but does not make it true. See Illusory truth effect, THE DECISION LAB , https://thedecisionlab.com/bias/illusory-truth-effect/ (last visited March 8, 2019) (describing principle that "repetition is often conflated with validity.").
In addition, there is some evidence that first-time terrorism offenders are no more likely to reoffend than individuals who commit other crimes. As a general matter, individuals with little or no criminal history are much less likely to commit additional crimes once released than those with lengthier criminal histories. See United States Sentencing Commission, "Recidivism and the 'First Offender' (May 2004) at 26, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last visited March 6, 2019). And "[w]hile 'the question of recidivism after terrorism-related detention is empirically fraught,' the very limited data suggests that individuals convicted of terrorism offenses do not recidivate at higher rates than those convicted of other crimes." See Ahmed at 1550. Sameer Ahmed writes that "[o]f the more than 300 prisoners who have completed their terrorism sentences since 2001," there were only " 'a handful of cases in which released inmates had been rearrested, a rate of relapse far below that or most federal inmates.' " Id. (quoting Scott Shane, Beyond Guantanamo, a Web of Prisons for Terrorism Inmates, N.Y. TIMES , Dec. 10, 2011). Ahmed also describes the success that other countries have had in rehabilitating individuals convicted of terrorism offenses. Id. at 1552-53 ("Many of these programs have been successful in rehabilitating terror offenders and helping them adjust back into society.").
Accordingly, the Court concludes that automatically increasing a defendant's criminal history to reflect an untested concern about recidivism is inappropriate.
3. Inappropriate as to this Defendant
Finally, and most importantly, the terrorism enhancement's treatment of criminal history flies in the face of fair, individualized sentencing, and is inappropriate as to this Defendant. "The presumption under U.S.S.G. section 3A1.4 is incompatible with 18 U.S.C. § 3553, which requires that a defendant be evaluated individually to justify his or her sentence." McLoughlin at 116. As Judge Kane wrote in the Jumaev case, "The circumstances of individuals convicted of crimes of terrorism ... differ greatly, and sentencing them without crediting those differences results in disproportionate sentences and disparities in sentencing." 2018 WL 3490886, at *11. Judge O'Toole Jr. made a similar observation, holding that, due to the 12-level adjustment to offense level and the automatic assignment of criminal history category VI, the enhancement "is actually, in my view, contrary to and subversive of the *1016 mission of the Guidelines which is to address with some particularity the unique facts of the given case." Transcript of Disposition (dkt. 439) at 69, United States v. Mehanna, No. 09-10017-AO (D. Mass. 2012). He continued:
Moreover, the automatic assignment of a defendant to a Criminal History Category VI is not only too blunt an instrument to have genuine analytical value, it is fundamentally at odds with the design of the Guidelines. It can, as it does in this case, import a fiction into the calculus. It would impute to a defendant who has had no criminal history a fictional history of the highest level of seriousness. It's one thing to adjust the offense level upward to signify the seriousness of the offense. It is entirely another to say that a defendant has a history of criminal activity that he does not, in fact, have.
Id. (emphasis added). Judge O'Toole contrasted the terrorism enhancement with the career offender guideline, which makes a similar adjustment, but does so "precisely because [a defendant] has a certain criminal history." Id. at 69-70. He concluded that the terror enhancement's criminal history adjustment was "simply a way of 'cooking the books' to get to a score and a desired sentencing range," at least in his case. Id. at 70.
The terrorism enhancement treats all terrorism defendants as if they are career criminals. See U.S.S.G. § 3A1.4(b) ; McLoughlin at 57 ("The shift to Criminal History Category VI ensures that a defendant will be sentenced as if he or she were a career criminal, with no empirical evidence that this is true or fair...."). Career criminals-individuals who have repeatedly demonstrated their refusal or inability to follow the law-have a higher likelihood of recidivism. See United States v. Segura-Del Real, 83 F.3d 275, 277 (9th Cir. 1996) ("But category VI is different from the other categories. Defendants are placed in category VI because they are the most intractable of all defendants."); see also ids="11641860" index="62" url="https://cite.case.law/f3d/83/275/#p277">id. at 279 n.1 ("defendants in Category VI, the highest criminal history category, are, not surprisingly, the defendants who demonstrate the most limited likelihood of successful rehabilitation and the greatest likelihood of recidivism"); United States v. Bad Marriage. 392 F.3d 1103, 1117 (9th Cir. 2004) (Callahan, J., dissenting) ("all category VI defendants have lengthy criminal records. 'It is the very circumstances of their recidivism which puts them in this category.' ") (quoting Segura-Del Real, 83 F.3d at 277 ).
Defendant is not a career criminal. Indeed, he has "zero" criminal history. See PSR at 14. Absent the enhancement, he would have a criminal history category of I. Id. (citing U.S.S.G. Chapter 5, Part A - Sentencing Table). Automatically assigning him a criminal history of VI would be illogical and unjust. Fortunately, the guidelines provide that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." See U.S.S.G. § 4A1.3(b)(1).
Even Meskini, 319 F.3d at 92, the Second Circuit case that included the much-quoted line about terrorists with no prior criminal history being "unique among criminals" in their likelihood of recidivism, noted that "[a] judge determining that § 3A1.4(b) over-represents 'the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes' always has the discretion under § 4A1.3 to depart downward at sentencing." Meskini suggested, however, that a judge should only do so "in exceptional cases." Id. That was not an *1017 exceptional case, apparently: the defendant had "an extensive history of crime," including "an extensive history of fraud" akin to the fraud employed to support the terrorist plot at issue, and he "conceded that he was a long-time criminal." Id. The court observed that the defendant's "complaint that § 3A1.4(b) is unfair to defendants without a criminal history rings particularly hollow." Id.
The government contends here that, as in Meskini, and despite "not having any previous convictions," Defendant has an extensive history of crime. See Gov. Supp. Memo. at 9. But its support for this point is that "he was plainly involved in a wide range of identity theft, and also most likely involved in some degree of drug trafficking as well." Id. (citing Gov. Sentencing Memo. at 27, describing telephone conversation in the UCE's presence that the UCE surmised was about a drug deal in Ukiah, California, after which surveillance agents observed Defendant driving to Ukiah to meet with unknown individuals). An uncharged, unproven drug deal, and identity theft that might or might not go beyond the identity theft crimes to which Defendant pled guilty in this case, see Indictment; Change of Plea Hearing; Plea Application, is hardly analogous to the defendant's history in Meskini, 319 F.3d at 92, and hardly justifies treating Defendant as a category VI offender.
Given Defendant's actual criminal history, the other 18 U.S.C. § 3553(a) factors discussed by the parties in their briefing, the probation officer in the PSR, and the Court at sentencing, and the absence of any evidence of an unusual likelihood of recidivism, the Court concludes that a departure to category I is appropriate. See United States v. Muhtorov, 329 F.Supp.3d 1289, 1300 (D. Colo. 2018) ("I am aware of no evidence indicating that, solely based on the crimes Muhtorov has committed, he is the most likely of all offenders to recidivate."). Indeed, a departure is necessary to reach a fair, individualized sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. See 18 U.S.C.A. § 3553 ; Brown at 521 ("answer" to problems with sentencing enhancement is "to affirm the discretion of trial judges to modify the enhancement's application in individual cases."); United States v. Stewart, 590 F.3d 93, 154 (2d Cir. 2009) (Calabresi, J., concurring) ("When a Guidelines recommendation has such dramatic consequences and yet covers a multitude of sins, unusually broad sentencing discretion in the district court is essential. Indeed, it must be so to comply with the Supreme Court's remedial holding in [ Booker ].").
C. Conclusion
Defendant's crime was serious, and the Court gave Defendant a serious sentence. The Court applied the terrorism enhancement because it concluded that the offense involved a "federal crime of terrorism." See U.S.S.G. § 3A1.4(a). But the Court declined to apply the terrorism enhancement's automatic criminal history category of VI, which is deeply flawed and at the very least does not fit this defendant. See U.S.S.G. § 4A1.3(b)(1).
IT IS SO ORDERED.

Ahmed also explains that "[t]he idea that those convicted of terrorism offenses cannot be rehabilitated or deterred stems from the belief that, unlike other criminal conduct, the primary motivation of terrorism is ideological." Id. at 1536. He argues that that assumption is unfounded. Id. at 1548.

Meskini was addressing, and rejecting, the defendant's argument that the terrorism enhancement "violated his right to due process by impermissibly double counting the same criminal act, once for the offense level and once for the criminal history category." Id. at 91. This Court is not making such an argument.