11-3825-cr (L)
United States v. Banol-Ramos et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand thirteen.

Present:
　　　　　ROBERT A. KATZMANN,
　　　　　DENNY CHIN,
　　　　　　　　*Circuit Judges*,
　　　　　MIRIAM GOLDMAN CEDARBAUM,[*]
　　　　　　　　*District Judge.*

_____

UNITED STATES OF AMERICA,

　　　*Appellee*,

　　　　　　v.                                            Nos. 11-3825-cr (L)
　　　　　　　　　　　　　　　　　　　　　　　　　　　 11-5256-cr (C)

YARLEI BANOL-RAMOS, AKA DIANA, JORGE ABEL
IBARGUEN-PALACIO, AKA TURBO,

　　　*Defendants-Appellants,*

ALEXIS FREDDY MOSQUERA-RENTERIA, AKA
RONAL, AKA CARR RONALD,
　　　*Defendant*.

_____

_____

[*] The Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

For Appellee:                                       Jeffrey A. Brown, Rebecca Monck Ricigliano, Michael A. Levy, Brent S. Wible, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY

For Defendant-Appellant Yarlei
Banol-Ramos:                                        Ryan Thomas Truskoski, Harwinton, CT

For Defendant-Appellant Jorge Abel
Ibarguen-Palacio:                                   David A. Lewis, Barry D. Leiwant, Assistant Federal Public Defenders, Federal Defenders of New York, Inc., New York, NY

Appeal from the United States District Court for the Southern District of New York (Pauley, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of conviction is **AFFIRMED** with respect to defendant-appellant Yarlei Banol-Ramos and **REMANDED** for further proceedings with respect to defendant-appellant Jorge Abel Ibarguen-Palacio.

Defendants-Appellants Yarlei Banol-Ramos and Jorge Abel Ibarguen-Palacio appeal from judgments of conviction entered on September 20, 2011 and December 14, 2011, respectively, by the United States District Court for the Southern District of New York (Pauley, *J.*), after the defendants each pled guilty to conspiracy to provide material support to a designated terrorist organization in violation of 18 U.S.C. § 2339B.  On appeal, the defendants, both admitted members of the Colombian terrorist organization Fuerzas Armadas Revolucionarias de Colombia ("FARC"), argue that the sentences imposed by the district court are unreasonable.  Specifically, defendant Banol-Ramos contends that: (1) her sentence was procedurally and substantively unreasonable; (2) the district court's imposition of two enhancements to her Sentencing Guidelines range — committing an offense involving a federal

2

crime of terrorism, U.S.S.G. § 3A1.4, and committing an offense involving the provision of firearms, U.S.S.G. § 2M5.3 — constituted impermissible double-counting; and (3) there is a scrivener's error in the judgment of conviction. Defendant Ibarguen-Palacio argues that the district court erred in applying the terrorism enhancement to his Guidelines range because there was no evidence that his conduct "involved" or was "intended to promote" a "federal crime of terrorism." U.S.S.G. § 3A1.4. We presume the parties' familiarity with the facts and procedural history of this case.

We start with Banol-Ramos's challenge to the reasonableness of the district court's imposition of the maximum statutory sentence of 180 months of imprisonment. When we review a district court's sentence for "reasonableness, which is 'akin to review for abuse of discretion . . . we consider whether the sentencing judge exceeded the bounds of allowable discretion, committed an error of law in the course of exercising discretion, or made a clearly erroneous finding of fact.'" *United States v. Leslie*, 658 F.3d 140, 142 (2d Cir. 2011) (per curiam) (quoting *United States v. Williams*, 475 F.3d 468, 474 (2d Cir. 2007)). We first determine whether "the district court complied with the Sentencing Reform Act's procedural requirements," and then turn to the more deferential inquiry into substantive reasonableness. *United States v. Cavera*, 550 F.3d 180, 189-90 (2d Cir. 2008) (en banc) (emphasis omitted).

Here, Banol-Ramos appears to challenge both the procedural and substantive reasonableness of her sentence. She argues that the district court failed to give sufficient weight to the abuse she suffered from being a member of FARC since the age of 12, in violation of section 3553(a)'s requirement that the sentence reflect the defendant's personal history and characteristics, and that, given this abuse, a sentence at the statutory maximum of 15 years

3

"cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted). We disagree.

Procedurally, the district court plainly took account of the fact that Banol-Ramos "was subject to heinous abuse." Banol-Ramos App'x 53. The district court, however, found that this factor was outweighed by the serious and violent nature of the crime, namely, that she was arrested following a shootout with Panamanian police that she initiated, and that she and her compatriots were arrested in possession of four fully-loaded AK-47s, a Galil rifle, several hundred rounds of ammunition, explosives, and other gear that identified the defendants as members of FARC. From this, the district court concluded that Banol-Ramos was a "very dangerous person" and that her history was "no excuse" for the violent nature of her crime. The district court calculated her Guidelines range as thirty years to life and imposed the statutory maximum sentence of fifteen years. There was no procedural error in the sentence.

Nor was the sentence substantively unreasonable. Given the facts before the district court, we find no merit to defendant's contention that the district court's imposition of a sentence at the statutory maximum was so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law" as to "damage the administration of justice." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). Banol-Ramos also argues that the district court abused its discretion by not imposing a downward departure pursuant to U.S.S.G. § 4A1.3(b) because the terrorism enhancement elevated her criminal history category to VI. This too fails; "a refusal to downwardly depart is generally not appealable . . . [unless the] sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal." *United States v. Stinson*, 465 F.3d 113, 114 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *see*

4

*United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003) (holding that downward departure from terrorism enhancement is left to district court's discretion); Banol-Ramos App'x 54 ("Ms. Banol Ramos, . . . you are a very dangerous person and someone who needs to be incarcerated for a long time. Quite frankly, if it were in my power, I'd impose a longer sentence.").

We next turn to Banol-Ramos's argument that the imposition of both the terrorism and firearm enhancements on her Guidelines range constituted impermissible double-counting. "Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines. . . . On the other hand, multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct." *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000) (internal quotation marks and citations omitted). "[A] district court calculating a Guidelines sentence may apply multiple Guidelines provisions based on the same underlying conduct where that is the result clearly intended by Congress and the Sentencing Commission." *United States v. Maloney*, 406 F.3d 149, 152 (2d Cir. 2005). The terrorism enhancement is applicable where "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4; *see also id.* cmt.1 (defining "federal crime of terrorism" with reference to 18 U.S.C. § 2332b(g)(5)). It operates by increasing the defendant's offense level by 12 levels or to level 32, whichever is greater, and by automatically placing the defendant in Criminal History Category VI. U.S.S.G. § 3A1.4. The firearms enhancement is a specific terrorism-related offense enhancement that raises the base offense level of a conviction for providing material support to a designated terrorist organization by two levels where "the offense involved the provision of (A) dangerous weapons; (B) firearms;

5

[or] (C) explosives . . . with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act." U.S.S.G. § 2M5.3(b)(1).

Here, Banol-Ramos argues that the terrorism and firearms enhancements constitute double counting for two reasons. First, she argues that the enhancements are duplicative of the offense of conviction because the offense of supporting a terrorist organization already encompasses terrorism and weapons. Second, she argues that the enhancements are duplicative of each other because the possession of weapons is the same type of harm that is contemplated in the terrorism enhancement.

Neither of Banol-Ramos's arguments has merit. First, a conviction for material support of a terrorist organization does not necessarily imply that the defendant committed an offense of terrorism or that she provided firearms to that organization. Not all material support for terrorism is calculated to affect government conduct, nor does it always involve weapons. *See, e.g.*, *United States v. Stewart*, 590 F.3d 93, 136-39 (2d Cir. 2009) (upholding the denial of the imposition of terrorism enhancement on material support conviction for translator where offense conduct was insufficient to show he intended to promote or was involved in a federal crime of terrorism). Second, as applied specifically to this case, Banol-Ramos's indictment for material support charged her with providing FARC with "personnel . . . supplies . . . and other support and resources," which plainly covered conduct beyond that covered by the terrorism or firearms enhancements.

The enhancements are also not duplicative of each other. Each enhancement applied here "represents a discrete harm": one encompassed her commission of a crime of terrorism, *i.e.*, that her actions were calculated to affect government conduct, and the other encompassed her

6

provision of firearms and explosives. *See Maloney*, 406 F.3d at 153. The official commentary to the Sentencing Guidelines provides that, "[a]bsent an instruction to the contrary, enhancements under Chapter Two [and] adjustments under Chapter Three . . . are to be applied cumulatively," even where they "may be triggered by the same conduct." U.S.S.G. § 1B1.1, cmt.4(B). There is no such instruction to the contrary regarding the combination of section 2M5.3(b) and section 3A1.4. The enhancements can be applied together.

Finally, Banol-Ramos notes that her judgment of conviction contains a typographical error; it lists her convicted offense as 18 U.S.C. § 2239B. Defendant Ibarguen-Palacio's judgment of conviction contains this same typographical error. On remand, the district court should correct both judgments to refer instead to § 2339B. *United States v. Latorre Benavides*, 241 F.3d 262, 264 (2d Cir. 2001) (per curiam); Fed. R. Crim. P. 36.

We next turn to Ibarguen-Palacio's separate appeal. Ibarguen-Palacio challenges the district court's application of the terrorism enhancement, U.S.S.G. § 3A1.4(a), to his conviction for providing material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B. Again, the terrorism sentencing enhancement applies "if the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). Here, the district court found that Ibarguen-Palacio's offense involved a federal crime of terrorism and did not reach the "intended to promote" prong of the enhancement. A federal crime of terrorism is one that "(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of [a list of predicate offenses, including § 2339B]." 18 U.S.C. § 2332b(g)(5). We have previously held that the "calculation" element of a federal crime of terrorism requires proof that the

7

defendant possessed the "specific intent . . . to commit an offense that was calculated to influence" government conduct. *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010) (internal quotation marks and citation omitted). Hence, to impose the terrorism enhancement, the district court was required to find that Ibarguen-Palacio committed (a) an enumerated offense, (b) with specific intent to influence government conduct.

The district court properly found that the first prong was met. By pleading guilty to conspiracy to provide material support to a terrorist organization in violation of 18 U.S.C. § 2339B, Ibarguen-Palacio admitted committing an enumerated offense. *See* 18 U.S.C. § 2332b(g)(5)(B) (listing § 2339B); Ibarguen-Palacio App'x 39 ("Mr. Palacio pled guilty to conspiring to provide material support or resources to a foreign terrorist organization. This is an enumerated crime of terrorism."). There was no error in this respect.

As to the issue of specific intent, however, the district court's reasoning was unclear. After describing Ibarguen-Palacio's involvement with FARC, the district court concluded that defendant "agreed to help FARC in their activities," and that he "knew a good deal about the organization that he was joining." Ibarguen-Palacio App'x 40-42. Taken alone, however, these facts are not sufficient to support a finding that Ibarguen-Palacio had the specific intent to influence government conduct by intimidation or coercion, or to retaliate against the government. In other words, defendant's agreement to help FARC does not necessarily establish that he specifically intended to influence or retaliate against the government. *See Stewart*, 590 F.3d at 136-39 (finding no clear error in district court's decision not to apply enhancement to translator convicted of material support for passing on messages from incarcerated terrorist to other terrorist and for assisting lawyer and terrorist in conducting secret conversations by

8

distracting guards because there was no evidence of specific intent to influence government conduct).

The district court also relied heavily on Ibarguen-Palacio's participation in the Panamanian boat incident that led to his arrest, finding that "[h]e actively took part in the hostage taking of Panamanian police officers, and his actions clearly show this Court that he intended to commit an offense calculated to influence or affect the conduct of government by intimidation or coercion." Ibarguen-Palacio App'x 41.[1] But the "offense" that the district court identified as the basis for applying the terrorism enhancement was Ibarguen-Palacio's plea to conspiracy, *i.e.*, he agreed with others to provide material support to FARC.

While the district court discussed specific intent in the context of the boat incident, it did not explain whether and how that intent is transposed to the enumerated offense. The specific intent found by the district court must apply to the commission of the enumerated offense itself. Here, since the relevant predicate offense is the conspiracy count to which Ibarguen-Palacio pleaded guilty, the district court must find that Ibarguen-Palacio committed that offense with the

---

[1] The district court concluded that Ibarguen-Palacio necessarily pointed a gun at the Panamanian officers based on the statement in the Presentence Report ("PSR") that after Banol-Ramos pointed her gun at the officers, "the other four individuals on the . . . [b]oat also pointed weapons at the police . . . Mosqeueria-Renteria, Banol-Ramos, Ibarguen-Palacio, and the three co-conspirators then demanded that the police drop their weapons." Ibarguen-Palacio PSR 6. Ibarguen-Palacio challenges the district court's factual finding on appeal, arguing that the court erred in relying on this "bare conclusion" in the PSR. "We must accept a district court's findings of fact (through its adoption of the facts included in a PSR), unless they are clearly erroneous." *United States v. Watkins*, 667 F.3d 254, 261 (2d Cir. 2012). The district court did not clearly err in adopting this conclusion. Ibarguen-Palacio also argues that the district court failed to resolve that he disputed the PSR's conclusion. Because he did not raise a Rule 32(i)(3)(B) objection at sentencing we review the challenge to the failure to resolve disputed facts for plain error. *United States v. Wagner-Dano*, 679 F.3d 83, 90 (2d Cir. 2012). Again, we find no error in the district court's conclusion that Ibarguen-Palacio held a gun during the incident.

specific intent to affect government conduct by coercion or intimidation before applying the

terrorism enhancement. In other words, the district court must find that Ibarguen-Palacio entered

into a conspiracy to assist FARC with the specific intent to influence government conduct by

intimidation or coercion, such that the crime to which he pleaded guilty constitutes a federal

crime of terrorism.[2]

While we do not conclude that the record is insufficient as a matter of law to support a

finding of specific intent to influence government conduct, we do believe a fuller explanation

and further findings are warranted. We therefore remand Ibarguen-Palacio's case in accordance

---

[2] In the alternative, it could be that Ibarguen-Palacio's conduct during the Panamanian boat incident in and of itself amounts to one of the predicate offenses that constitute a "[f]ederal crime of terrorism" and would therefore provide a separate basis for applying the terrorism enhancement. There is no restriction in the text of the terrorism enhancement that limits its application to only the specific offense to which a defendant pleads guilty. *See* U.S.S.G. § 3A1.4(a) (terrorism enhancement applies "if the offense is a felony that *involved*, or was intended to promote, a federal crime of terrorism" (emphasis added)); *Awan*, 607 F.3d at 313-14 ("[A] defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5), or his relevant conduct includes such a crime."). On the present record, however, it is unclear whether the boat incident would qualify as such a predicate offense. For example, the parties agree that, due to the absence of certain jurisdictional requirements, the hostage taking of the Panamanian police officers does not constitute the predicate offense of "hostage taking" as set forth at 18 U.S.C. § 1203. Similarly, Ibarguen-Palacio's actions during the hostage taking may qualify by themselves as the substantive offense of "providing material support to [a] designated foreign terrorist organization[]," but it is unclear on the current record how precisely his actions constituted material support. *See, e.g.*, *United States v. Farhane*, 634 F.3d 127, 152 (2d Cir. 2011) ("[O]ur dissenting colleague persists in conflating the provision of personnel with the provision of services by that personnel. While the latter form of material support may require proof of particular engagement or activity, the former focuses on submission to the direction and control of a terrorist organization."). While we need not resolve this issue now, to the extent that on resentencing the district court chooses to rely on Ibarguen-Palacio's conduct during the boat incident as justifying the imposition of a terrorism enhancement, we note that it will need to either tie that intent back to the enumerated offense or identify a predicate offense different than the conspiracy offense to which Ibarguen-Palacio pleaded guilty.

with the procedures of *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), for resentencing. On remand, the district court shall determine whether Ibarguen-Palacio, in committing a predicate offense for a "federal crime of terrorism," possessed the specific intent to affect government conduct by intimidation or coercion, and, if it answers the question in the affirmative, it shall set forth the factual basis for its conclusion.[3]

We have considered all of the parties remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment is **AFFIRMED** with respect to defendant-appellant Banol-Ramos and **REMANDED** for further proceedings with respect to defendant-appellant Ibarguen-Palacio.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[3] In the interest of judicial economy, this panel will retain jurisdiction over any subsequent appeal; either party may notify the Clerk of a renewed appeal within fourteen days of the district court's decision. *See Jacobson*, 15 F.3d at 22.