20-2184-cr (L)
United States v. Leroux

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: March 7, 2022       Decided: June 3, 2022)

Docket Nos. 20-2184-cr, 20-3410-cr

UNITED STATES OF AMERICA,

*Appellee,*

v.

PAUL CALDER LEROUX, AKA JOHAN SMIT,

*Defendant-Appellant.*[*]

Before:

CHIN, LOHIER, and ROBINSON, *Circuit Judges*.

We consider whether the United States District Court for the Southern District of New York (Abrams, J.) erred when, pursuant to the CARES Act, it sentenced Paul Calder Leroux by videoconference after finding that Leroux had knowingly and voluntarily waived his right to physical presence at his sentencing proceedings and that the proceedings could not be further delayed without serious harm to the interests of justice. We identify no error in the District Court's CARES Act findings or its decision to proceed by videoconference. AFFIRMED.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

JEFFREY CHABROWE, The Law Office of Jeffrey Chabrowe, New York, NY, *for Defendant-Appellant* Paul Calder Leroux.

MICHAEL D. LOCKARD, Assistant United States Attorney (Won S. Shin, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee* United States of America.

LOHIER, *Circuit Judge*:

This appeal is our first opportunity to consider what findings a district court must make under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") before it proceeds to sentence a defendant by videoconference rather than in person. Because the question of what a district court must do under these circumstances is likely to recur given the pandemic's duration, we address and resolve the issue by opinion in this case. Finding no error in the conclusion of the United States District Court for the Southern District of New York (Abrams, J.) that the CARES Act's requirements for proceeding by videoconference were satisfied in Leroux's case, we **AFFIRM**.

# BACKGROUND

By the time he was arrested and charged in 2012, Paul Calder Leroux, the appellant, had led a global criminal empire, based in the Philippines, for roughly eight years. To give a sense of the scope and viciousness of Leroux's crimes, we need only excerpt a portion of what the District Court said at his sentencing years later, in 2020:

> I have before me a man who has engaged in conduct in keeping with the villain in a James Bond movie. He operated a mercenary team that committed beatings, shootings, and firebombs. He participated in the murder for hire of at least seven people.
>
> And let's just pause there for a minute. There are seven people -- Herbert Chu, David Smith, Chito, Naomi Edillor, Catherine Lee, Joe Frank Zuñiga, and Bruce Jones -- whose loved ones will never see them, hold them, or speak to them again. In the case of Catherine Lee, she was shot in the face and her lifeless body was left on a pile of garbage. Others were shot and their bodies anchored to boats and sunk in the water. The bodies of others still have not yet been found.
>
> Mr. Leroux trafficked in illegal pharmaceuticals: methamphetamine and cocaine. He smuggled gold, chemicals, and weapons on several continents. He ran a weapons research and development program for the Iranian government. He attempted to acquire surface-to-air missiles. He laundered funds from a pharmaceutical company. He planned a coup in the Seychelles. And he bribed government officials in the

3

Philippines, China, Laos, Africa, and Brazil. If Paul Calder Leroux had a situation that he could bribe or kill his way out of, he did so.

App'x 245–46.

In 2014, after his arrest, Leroux began to cooperate with the Government, waived indictment, and pleaded guilty to those crimes for which jurisdiction existed in the United States: conspiring to import over 500 grams of methamphetamine into the United States, in violation of 21 U.S.C. § 963; violating the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 et seq., and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 561; conspiring to commit computer hacking, in violation of 18 U.S.C. § 1030(a)(2) and (b); being an accessory-after-the-fact to securities fraud, in violation of 18 U.S.C. § 3; conspiring to violate the Food, Drug, and Cosmetic Act, in violation of 18 U.S.C. § 371; conspiring to commit mail and wire fraud, in violation of 18 U.S.C. § 1349; and conspiring to launder money, in violation of 18 U.S.C. § 1956(h).

After Leroux testified as a cooperating witness at the trial of some of his former criminal associates, the District Court set sentencing for August 2019. For reasons not relevant to this appeal, that proceeding was adjourned, and

4

on March 9, 2020, the District Court rescheduled sentencing for May 29, 2020—as we now know, but as the District Court may not then have foreseen, some two months after the start of the COVID-19 pandemic in the United States.

On March 27, 2020, Congress enacted the CARES Act, which authorizes the expanded use of videoconferencing and telephone conferencing in criminal proceedings if certain conditions are met. See Pub. L. No. 116-136, § 15002(b), 134 Stat. 281, 528–30 (2020). A few days later, the Judicial Conference of the United States, the administrative policy-making body for the federal courts, found that "emergency conditions due to the national emergency declared by the President with respect to COVID-19 will materially affect the functioning of the federal courts generally." Administrative Office of the U.S. Courts, Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic (Mar. 31, 2020), https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic (quotation marks omitted). Meanwhile, in the Southern District of New York, then-Chief Judge Colleen McMahon issued a standing order on March 30, 2020 that found that "felony pleas under

Rule 11 . . . [and] felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure" could not "be conducted in person without seriously jeopardizing public health and safety," and that "video teleconferencing, or telephone conferencing if video conferencing [were] not reasonably available," could be used "with the consent of the defendant . . . after consultation with counsel," and after "a finding by the presiding judge that the proceeding [could not] be further delayed without serious harm to the interests of justice." Standing Order M10-468 at 3, In re: Coronavirus/COVID-19 Pandemic, No. 20-MC-176 (S.D.N.Y. Mar. 30, 2020), ECF No. 1 (the "Standing Order"); App'x at 117–19. The Standing Order provided that "because the CARES Act does not require the consent of a defendant . . . to be in writing, such consent may be obtained in whatever form is most practicable under the circumstances, so long as the defendant's consent is clearly reflected in the record." Id. At all times relevant to this appeal, the District Court's authorization to conduct remote felony pleas and sentencings remained in effect, and indeed it remains in effect to this day. See Eighth Amended Standing Order M10-468, In re: Coronavirus/COVID-19 Pandemic, No. 20-MC-176 (S.D.N.Y. Apr. 6, 2022), ECF No. 9.

6

After another brief adjournment of the May 2020 sentencing date due to the COVID-19 pandemic, and under the authorization provided by the CARES Act and the Standing Order, the District Judge decided to sentence Leroux by videoconference on June 12, 2020. At the start of the sentencing hearing, Judge Abrams confirmed that Leroux, who was "accessing th[e] video conference from [a detention] facility," App'x 211, could hear and see her and the other participants in the videoconference, including his attorney. After informing Leroux that he could "speak privately with [his] attorney" by being moved with counsel "into a remote breakout room where no one else [could] see [him] or hear [him]," App'x 211, Judge Abrams established that Leroux understood and waived his right to be physically present in the courtroom:

> THE COURT: So I understand from defense counsel, Mr. Leroux, that you wish to waive your physical presence and proceed by video conference today. Is that correct?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And did your attorney explain to you that you have a right to be present in court when you are sentenced and that by --
> THE DEFENDANT: Yes, your Honor.
> THE COURT: -- consenting to proceed by video

conference you are waiving that right? Do you understand that?

Yes? Is that right, Mr. Leroux?

THE DEFENDANT: Yes, your Honor.

App'x 211–12. Judge Abrams also asked Leroux's attorney to explain "the process by which" the attorney "discussed with Mr. Leroux his right to be present and his willing and voluntary waiver of that right." App'x 212.

Leroux's attorney responded as follows:

Your Honor, I discussed with Mr. Leroux the option of doing the sentencing remotely or doing it live in a courtroom and . . . when that potentially could be . . . , and how this would be potentially different. And Mr. Leroux, after a lengthy discussion, said that he wanted to go forward with this, doing it by video as we're doing it today.

App'x 212. Having heard from both Leroux and his attorney on the issue, Judge Abrams found that Leroux had "knowingly and voluntarily waived the right to be physically present for this sentencing." App'x 213. Judge Abrams also determined, without elaboration, that Leroux's sentencing could not "be further delayed without serious harm to the interest of justice." App'x 213.

The District Court then proceeded to the substance of the sentencing hearing. First, it adopted the factual findings and Guidelines calculations

8

contained in Leroux's Pre-Sentence Report, to which neither party objected.

Then, after considering each party's arguments, it sentenced Leroux principally to 25 years' imprisonment to be followed by a lifetime term of supervised release.

After the sentencing hearing, the District Court identified an error in how it had allocated sentences for certain counts of conviction.[1] To correct the error, it held a supplemental sentencing hearing by videoconference on September 10, 2020. At the start of the hearing the District Court, as it had at the prior sentencing, confirmed that Leroux wished to proceed by videoconference and that the waiver of his right to be physically present in court was both knowing and voluntary. And the court again found that the proceeding could not be further delayed without serious harm to the interests of justice. This time, however, the District Court provided more justification: moving forward with the hearing without delay, it explained, would enable Leroux (who sought a sentence of time served) both to appeal any sentence

[1] The sentence announced on June 12, 2020 included a sentence of 240 months' imprisonment on two of the counts of conviction, and inadvertently also applied a sentence of 60 months' imprisonment to those same counts, rather than to another count for which that sentence was intended. App'x 249–50. Because all sentences were set to run concurrently, the error did not affect the aggregate sentence.

immediately as an avenue to obtain an earlier release from detention and to be designated sooner to a correctional facility. After correcting the technical sentencing error that initially prompted the supplemental hearing, the District Court again sentenced Leroux principally to a term of 25 years' imprisonment to be followed by a lifetime term of supervised release.

This appeal followed.

**DISCUSSION**

"Under both the Constitution and Federal Rule of Criminal Procedure 43(a)(3), a criminal defendant has the right to be present during sentencing." United States v. Salim, 690 F.3d 115, 122 (2d Cir. 2012). In Salim, we assumed that the physical presence requirement under Rule 43 "is not satisfied by participation through videoconference" and that in most sentencings Rule 43 compels the defendant's physical presence in the courtroom. Id. Prior to enactment of the CARES Act, we recognized that a defendant in a non-capital case "may waive his right to be present" at sentencing under only very limited circumstances, "as long as that waiver is knowing and voluntary." Id.; see Fed. R. Crim. P. 43(c)(1)(B) ("A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be

10

present . . . in a noncapital case, when the defendant is voluntarily absent during sentencing.").  An accompanying provision for our purposes, Rule 53 of the Federal Rules of Criminal Procedure, states that "[e]xcept as otherwise provided by a statute or [the criminal procedure] rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." Fed. R. Crim. P. 53.  Rule 53 thus prohibits public videoconferencing of criminal proceedings.

The CARES Act created a statutory exception to the physical presence requirement under Rule 43 and Rule 53's general ban on videoconferencing of criminal proceedings.  It "authorizes a district court to conduct a felony sentencing hearing by videoconference" without the physical presence of the defendant "if four conditions are met":

> (1) the Judicial Conference of the United States "finds that emergency conditions . . . with respect to [COVID-19] will materially affect the functioning of either the Federal courts generally or a particular district court," § 15002(b)(2)(A); (2) the chief district judge finds that felony sentencing hearings "cannot be conducted in person without seriously jeopardizing public health," id.; (3) "the district judge in a particular case finds for specific reasons that the . . . sentencing . . . cannot be

further delayed without serious harm to the interests of justice," id.; and (4) the defendant consents "after consultation with counsel," § 15002(b)(4).

United States v. Coffin, 23 F.4th 778, 779 (7th Cir. 2022).

There is no dispute that the first two conditions are satisfied here. As noted, the Judicial Conference approved a temporary exception to the rule against broadcasts of criminal proceedings, permitting a judge to authorize the use of videoconferencing to provide the public and media with access to court proceedings because emergency conditions compelled it. And Chief Judge McMahon found that public access to the federal courthouse where Leroux's sentencing took place had to be restricted due to health and safety concerns arising from the pandemic. Leroux's consultation with counsel is also not at issue in this case.

We therefore focus on whether the proceedings in this case took place "with the consent of the defendant," CARES Act § 15002(b)(4), 134 Stat. at 529, and whether the sentencing judge adequately found "for specific reasons that the . . . sentencing . . . [could not] be further delayed without serious harm to the interests of justice," id. § 15002(b)(2)(A), 134 Stat. at 528–29.

12

On appeal, Leroux claims that the District Court never confirmed that he knowingly and voluntarily waived his right to be physically present for sentencing and failed to give specific reasons in support of its finding that delay would seriously harm the interests of justice, as required by the Act.[2] Because Leroux failed to challenge the District Court's findings at the sentencing hearings or otherwise object to proceeding with his sentencing by videoconference, we review for plain error. See Salim, 690 F.3d at 124; see also United States v. Garcia, 587 F.3d 509, 515 (2d Cir. 2009).

**I**

Both parties agree that the defendant's consent to be sentenced by videoconference under the CARES Act "must be knowing and voluntary like other waivers of the right to presence protected by Rule 43(a)." United States v. Howell, 24 F.4th 1138, 1143 (7th Cir. 2022). We have no reason to think that Congress intended to depart from this well-established general requirement.

---

[2] Leroux also argues that the District Court violated Rule 43, which sets forth the usual requirements of physical presence for felony sentencings. That argument misses the point. While Rule 43 provides the background rule that gives context to what the CARES Act requires, Leroux's is "a claim of CARES Act error," Coffin, 23 F.4th at 781, and it is the statute, not Rule 43, that supplies the relevant standard to resolve his challenge.

13

See United States v. Tureseo, 566 F.3d 77, 83 (2d Cir. 2009); see also Berghuis v. Thompkins, 560 U.S. 370, 382–83 (2010) (a waiver of a statutory right in criminal cases must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" (quotation marks omitted)); Salim, 690 F.3d at 123. The Government bears the burden of establishing Leroux's consent by a preponderance of the evidence. See Salim, 690 F.3d at 122.

An oral statement by the defendant expressing his consent to sentencing by videoconference and asserting that he consulted with counsel about his right to be present will usually be enough to establish the defendant's consent under § 15002(b)(4), which imposes no "specific procedural or evidentiary requirements to prove . . . consent." Howell, 24 F.4th at 1145. In this case, of course, there is no doubt that Leroux orally consented to be sentenced by videoconference. At the initial sentencing in June 2020, the District Court asked Leroux whether he waived his right to be physical present and consented to proceed by videoconference. Leroux said "yes." App'x 211–12. Leroux's attorney confirmed the statement. Counsel

14

described a "lengthy discussion" with Leroux about the relative merits of proceeding by videoconference "or doing it live in a courtroom." App'x 212. The discussion included the real possibility that Leroux's sentencing might be delayed if he insisted on participating in person. App'x 212. Counsel informed Judge Abrams that Leroux "said that he wanted to go forward with this, doing it by video as we're doing it today." App'x 212. After hearing from both Leroux and counsel, Judge Abrams properly found that Leroux had knowingly and voluntarily consented to move forward with the sentencing in June 2020 by videoconference.

Likewise, at the September 2020 supplemental hearing, the District Court incorporated by reference the proceedings of June 2020—including that part during which the District Court determined that Leroux had consulted with counsel about consenting to proceed with sentencing by videoconference. The District Court asked Leroux if he "again consent[ed] to proceed by video today." App'x 267. After Leroux responded, "I do, your Honor," the District Court specifically found "that a knowing and voluntary waiver of the right to be physically present ha[d] been made." App'x 267.

15

We see nothing in the record—Leroux's response, the absence of any objection from either Leroux or his attorney to proceeding by videoconference, or the colloquy during the prior June 2020 sentencing—that suggests that Leroux's consent was not knowing or voluntary, or that otherwise casts doubt on the validity of Leroux's consent at the June 2020 or the September 2020 hearings.  The District Court was entitled to accept both Leroux's word and counsel's representation that Leroux was fully informed of the rights he would surrender by agreeing to proceed remotely.  Cf. Salim, 690 F.3d at 123–24 (in a pre-CARES Act case, finding that the district court failed to ensure that the defendant's waiver of physical presence was knowing or voluntary after the defendant said that he only waived the right due to fears of intimidation and physical abuse).  We see no error in the District Court's finding that Leroux knowingly and voluntarily consented, after consulting his counsel, to proceeding by videoconference.

**II**

We turn to the next contested issue on appeal.  Section 15002(b)(2)(A) provides that if the district judge in a case "finds for specific reasons that the . . . sentencing in that case cannot be further delayed without serious harm to

16

the interests of justice, the . . . sentencing in that case may be conducted by video teleconference." CARES Act § 15002(b)(2)(A), 134 Stat. at 528–29. During both proceedings, the District Court orally found that the hearings could not be further delayed without serious harm to the interests of justice. App'x 213, 267. Leroux complains that the court should have given "specific reasons" for this finding but never did. We hold that the District Court properly determined that proceeding by videoconference was in the interest of justice and provided sufficient reason to satisfy § 15002(b)(2)(A).

Recall that during the June 2020 sentencing, the District Court determined that Leroux's sentencing could not "be further delayed without serious harm to the interest of justice," App'x 213, but then clarified during the September 2020 hearing that sentencing should not be delayed for two specific reasons. First, the court explained, proceeding right away with sentencing would allow Leroux to promptly appeal his sentence in the event that he received a sentence longer than time served. App'x 267. And second, doing so would facilitate Leroux's designation to a correctional facility. App'x 267. Both reasons reflect our own previously expressed concerns about delay in sentencing, namely, that it "may leave the defendant, as well as the

17

victim, in limbo concerning the consequences of conviction," and that it "postpones the commitment of the defendant to corrections facilities, may have a detrimental effect on rehabilitation, and suspends the appellate review of error." United States v. Ray, 578 F.3d 184, 198 (2d Cir. 2009) (quotation marks omitted).

Although the District Court's interests-of-justice finding in June 2020 was sparse, the record as a whole—including the District Court's articulation of more specific reasons for that finding during the September 2020 supplemental hearing—satisfies the requirements of § 15002(b)(2)(A). The analogous context of the Speedy Trial Act supports our analysis here. A district court may grant a continuance and exclude periods of delay from the speedy trial clock so long as the "ends of justice served" by the delay "outweigh the best interest of the public and the defendant in a speedy trial," and so long as "the court sets forth, in the record of the case, either orally or in writing, its reasons for" the finding. 18 U.S.C. § 3161(h)(7)(A); see United States v. Breen, 243 F.3d 591, 595–96 (2d Cir. 2001). We have held that "the precise reasons for the decision to grant a continuance" under the Speedy Trial Act "need not be entered on the record at the time the continuance is

granted," and that, "although the district court must decide initially whether to grant an ends-of-justice continuance, the purposes of the statute are satisfied by a subsequent articulation."  Breen, 243 F.3d at 596 (quotation marks omitted).

To be sure, as in the Speedy Trial Act context, the best practice is for the district court to put its reasons on the record at or near the time it sentences a defendant by videoconference.  Id. at 597 ("We continue to stress that whenever possible the district court should make the [end-of-justice] findings required by [the Speedy Trial Act] at the time it grants the continuance." (quotation marks omitted)).  Nevertheless, we conclude that here, based on the record as a whole, the District Court properly determined that delaying Leroux's sentence by requiring his physical presence in court would harm the interests of justice.

**III**

Because the District Court did not err in proceeding by videoconference after Leroux knowingly and voluntarily consented to do so, we need not address the remaining prongs of plain-error review, including whether Leroux's substantial rights were affected.  We note that in the absence of any

specific reasons to conclude that his substantial rights were affected, Leroux can only speculate that his physical presence "<u>may</u> <u>well</u> have afforded <u>some</u> advantage" to his ability to address the District Court's concerns about his remorse and rehabilitation. Appellant's Br. 27 (emphasis added). But when "the effect of an error on the result in the district court is uncertain[,] indeterminate or only speculative, we cannot conclude that appellant's substantial rights have been affected." <u>United States v. Worjloh</u>, 546 F.3d 104, 110 (2d Cir. 2008) (quotation marks omitted).

## CONCLUSION

We have considered Leroux's remaining arguments not referenced above and conclude that they are without merit. For the foregoing reasons, we **AFFIRM.**