*United States v. Sealed Defendant One*

# United States Court of Appeals for the Second Circuit

---

August Term 2021

Submitted: May 11, 2022
Decided: September 21, 2022

No. 21-118

---

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

SEALED DEFENDANT ONE,

*Defendant-Appellant.*\*

---

Appeal from the United States District Court
for the Southern District of New York
No. 20-cr-441, Cathy Seibel, *Judge*.

---

Before:     NEWMAN, CHIN, and SULLIVAN, *Circuit Judge*s.

Sealed Defendant One (the "Sealed Defendant") appeals from a judgment of conviction following his guilty plea to one count of transmitting a threat in interstate commerce, one count of threatening to assault a federal law officer, and

---

\* The Clerk of Court is respectfully directed to amend the caption as reflected above.

one count of obstruction of justice, in violation of 18 U.S.C. §§ 875(c), 115(a)(1)(B), and 1505, respectively. At a sentencing proceeding conducted by videoconference and under seal, the district court (Seibel, *J.*) sentenced Sealed Defendant principally to eighty-four months' imprisonment. On appeal, Sealed Defendant argues that (1) the government breached the plea agreement, (2) his sentence was procedurally unreasonable, and (3) the district court erred in conducting his sentencing by videoconference.

We conclude that (1) the plea agreement expressly provided for the government to take the very actions Sealed Defendant now characterizes as breaches of that agreement, (2) the district court provided adequate notice and factual support for the sentencing variances and enhancements it applied, and (3) Sealed Defendant knowingly and voluntarily waived his right to be physically present at sentencing. With respect to point (3), we also hold – as a matter of first impression – that *sealed* sentencings conducted by videoconference do not implicate Federal Rule of Criminal Procedure 53's prohibition on "the broadcasting of judicial proceedings from the courtroom" or the procedural requirements associated with the CARES Act's exception to Rule 53. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> Jeffrey Chabrowe, New York, NY, *for Defendant-Appellant* Sealed Defendant One.
>
> Andrew DeFilippis (Sam Adelsberg, Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

Sealed Defendant One (the "Sealed Defendant") appeals from the judgment

of conviction entered by the district court (Seibel, *J.*) following his guilty plea to

2

one count of transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875(c), one count of threatening to assault a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B), and one count of obstruction of justice in violation of 18 U.S.C. § 1505.[1]  At a sentencing proceeding conducted by videoconference and under seal, the district court sentenced Sealed Defendant principally to eighty-four months' imprisonment.  On appeal, Sealed Defendant argues that (1) the government breached the plea agreement, (2) his sentence was procedurally unreasonable, and (3) the district court erred in conducting his sentencing by videoconference.

For the reasons explained below, we conclude that (1) the plea agreement expressly provided for the government to take the very actions Sealed Defendant now characterizes as breaches of that agreement, (2) the district court gave adequate notice and identified adequate factual support for the sentencing variances and enhancements it applied, and (3) Sealed Defendant knowingly and voluntarily waived his right to be physically present at sentencing.  With respect

---

[1] Decision of this case was delayed by the panel's need to await its turn in a queue of cases pending in this Circuit resolving questions on "what findings a district court must make . . . before it proceeds to sentence a defendant by videoconference rather than in person," *United States v. Leroux*, 36 F.4th 115, 117 (2d Cir. 2022), following Congress's enactment of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.

to point (3), we also hold – as a matter of first impression – that *sealed* sentencings conducted by videoconference do not implicate Federal Rule of Criminal Procedure 53's prohibition on "the broadcasting of judicial proceedings from the courtroom" or the procedural requirements associated with the CARES Act's exception to Rule 53.  Accordingly, we affirm the judgment of the district court.[2]

## I. BACKGROUND

For over two decades, Sealed Defendant served the Federal Bureau of Investigation (the "FBI" or the "Bureau") as a paid confidential source on sensitive criminal and counterterrorism investigations.  Toward the end of that tenure, however, Sealed Defendant's behavior led the FBI to doubt his discretion and

---

[2] Although we allowed the parties to submit their briefs and appendix under seal in this appeal, we deem it appropriate to issue this Opinion on the public docket and for publication in the Federal Reporter.  There is a "strong presumption . . . under both the common law and the First Amendment" that judicial documents – and especially judicial *decisions*, which "are used to determine litigants' substantive legal rights" – "should . . . be subject to public scrutiny." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) (citation omitted); *see also United States v. Amodeo*, 71 F.3d 1044, 1048–50 (2d Cir. 1995); *United States v. Amodeo*, 44 F.3d 141, 145–46 (2d Cir. 1995); *United States v. Myers (In re Nat'l Broadcasting Co.)*, 635 F.2d 945, 949–54 (2d Cir. 1980); *Joy v. North*, 692 F.2d 880, 893–94 (2d Cir. 1982); *United States v. Biaggi (In re N.Y. Times Co.)*, 828 F.2d 110, 116 (2d Cir. 1987).  That presumption, of course, "does not end the inquiry," *Lugosch*, 435 F.3d at 120, and judicial decisions "may be sealed if . . . '[sealing] is essential to preserve higher values and is narrowly tailored to serve that interest,'" *In re N.Y. Times Co.*, 828 F.2d at 116 (quoting *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 9 (1986)).  Here, however, we have taken care to omit from our Opinion any details that would compromise sensitive counterterrorism or law-enforcement operations, endanger Sealed Defendant's personal safety while incarcerated, or otherwise personally identify him.  Accordingly, we find that sealing this Opinion is not "essential to preserve higher values," and we decline to do so. *Press-Enter. Co.*, 478 U.S. at 9.

trustworthiness. As a result, the FBI withdrew Sealed Defendant's authorization to conduct operational investigative activities for the Bureau and informed him that he would no longer be tasked on FBI investigations. Sealed Defendant reacted poorly to this news, sending a series of text messages to three FBI Agents and Officers with whom he had previously worked, threatening to kill them. Based on this conduct, the government charged Sealed Defendant with making threats in interstate communications and threatening to assault a federal law enforcement officer, in violation of 18 U.S.C. §§ 875(c) and 115(a)(1)(B), and a magistrate judge issued a warrant for his arrest. After being taken into custody, Sealed Defendant directed his wife to alert several suspected terrorists that they were subjects of ongoing FBI counterterrorism investigations, to offer them Sealed Defendant's assistance in evading capture, and then to destroy the evidence of such communications. Based on *this* conduct, the government additionally charged Sealed Defendant with obstruction of justice, in violation of 18 U.S.C. § 1505.

In late 2020, Sealed Defendant entered into an agreement with the government to plead guilty to all three charges. The plea agreement provided for a Sentencing Guidelines range of forty-six to fifty-seven months' imprisonment (the "Stipulated Guidelines Range"). It also provided that either party could seek

5

a sentence outside of the Stipulated Guidelines Range, and "make all appropriate arguments" in the event that the Probation Office were to calculate a Guidelines range "different from [the range] stipulated to." App'x at 9–10. Pursuant to the plea agreement, Sealed Defendant pleaded guilty to all three charges in a September 2020 plea hearing conducted – with Sealed Defendant's explicit consent – by videoconference. Due to the sensitivity of the national-security issues implicated in this case, and to protect Sealed Defendant from retaliation for his previous role as a law-enforcement cooperator, the district judge held the initial plea hearing under seal and subsequently ordered that the entire case be kept under seal.

Following Sealed Defendant's guilty plea, the Probation Office prepared a Presentence Investigation Report (the "PSR") that calculated a Guidelines range of fifty-one to sixty-three months' imprisonment. In its sentencing memorandum, the government stated that it did "not dispute the calculation of the . . . Guidelines range set forth in the PSR," *id.* at 54, and argued that an above-Guidelines sentence was necessary to adequately punish Sealed Defendant for his betrayal of the FBI and his willingness to aid those who seek to kill innocent Americans, to deter others from similar activity, and to protect the public from further crimes that

6

Sealed Defendant might otherwise commit. In his sentencing memorandum, Sealed Defendant sought a below-Guidelines, time-served sentence of twenty-six months' imprisonment, arguing that such a sentence would be appropriate in light of his twenty years of fruitful cooperation with the FBI and various personal mitigating factors.

After consulting with the parties, the district court scheduled Sealed Defendant's sentencing for December 2020. Due to the ongoing COVID-19 pandemic, however, this sentencing proceeding was conducted via Skype videoconference. *See* Standing Order, *In re Coronavirus/COVID-19 Pandemic*, No. 20-mc-176 (CM) (S.D.N.Y. Mar. 30, 2020), ECF No. 1 (finding that felony pleas and felony sentencings under Federal Rules of Criminal Procedure 11 and 32, respectively, could not be conducted in person without seriously jeopardizing public health and safety). At the beginning of the proceeding, after the district judge explained to Sealed Defendant that he had the right to an in-person sentencing – and the option to postpone the proceeding until it could be safely held in person – he and his counsel both affirmatively stated that they preferred to proceed by videoconference. The district judge then confirmed that, consistent with her order sealing the entire case, the only participants in the Skype

videoconference were the parties, their counsel, members of Sealed Defendant's immediate family, and the judge herself. After hearing extensive argument from the parties and providing lengthy discussion of the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Sealed Defendant to eighty-four months' imprisonment, to be followed by a three-year term of supervised release.

This appeal followed.

## II. DISCUSSION

### A. The Plea Agreement

Sealed Defendant contends that the government breached the plea agreement by (1) advocating a sentence above the Stipulated Guidelines Range, and (2) acquiescing in Probation's calculation of a higher Guidelines range. Neither contention is meritorious, however, because the plea agreement contemplates the government might take those actions.

We review a plea agreement "in accordance with principles of contract law" and look "to what the parties reasonably understood to be the terms of the agreement" to determine whether a breach has occurred. *United States v. Taylor*, 961 F.3d 68, 81 (2d Cir. 2020) (citation omitted). Where, as here, a defendant did

8

not raise any argument that the government breached the plea agreement before the district court, we review such claims for plain error. *Id.*

There was no error, much less plain error, in allowing the government to advocate a sentence above the Stipulated Guidelines Range. The government and Sealed Defendant *expressly* agreed that either party could "seek a sentence outside of the Stipulated Guidelines Range based upon the factors" delineated in 18 U.S.C. § 3553(a). App'x at 9. Indeed, the government and Sealed Defendant both availed themselves of this provision in arguing, respectively, for sentences above and below the Stipulated Guidelines Range. Sealed Defendant offers no persuasive explanation of how the plea agreement could be breached by conduct it expressly permitted.

Likewise, the government's failure to challenge Probation's calculation of a higher Guidelines range was not a violation of the plea agreement, which permitted the parties "to make all appropriate arguments" in the event that Probation calculated a Guidelines range "different from [the range] stipulated to." *Id.* at 9–10. The discrepancy between the Stipulated Guidelines Range and the range in the PSR arose from an apparent error in the plea agreement, which applied a three-level enhancement instead of a six-level enhancement in

connection with Sealed Defendant's threats to federal law enforcement agents. *See* U.S.S.G. § 3A1.2(a), (b). But section 3A1.2(b) clearly applies where the conditions of section 3A1.2(a) are met "and the applicable Chapter Two guideline is from Chapter Two, Part A." *Id.* § 3A1.2(b). Since the parties stipulated that the section 3A1.2(a) enhancement applied and that the Guideline applicable to these offenses was found in section 2A6.1 (i.e., Chapter Two, Part A), Probation correctly applied the six-level enhancement for Sealed Defendant's threats to law enforcement officers. Accordingly, the government's acquiescence to the PSR's corrected Guidelines calculation neither strayed from "what the parties reasonably understood to be the terms of the agreement" nor "produce[d] serious unfairness" for Sealed Defendant, and thus did not constitute a breach of the plea agreement or plain error attributable to the district court. *Taylor*, 961 F.3d at 81–82 (citations omitted).

## B. Procedural Reasonableness

Sealed Defendant raises several challenges to the procedural reasonableness of his sentence, arguing that: (1) the district court's imposition of an above-Guidelines sentence was a departure, not a variance, such that the district court procedurally erred in failing to provide notice of its putative departure; (2) this

putative departure lacked sufficient factual support; and (3) the section 3A1.2(a) enhancement lacked sufficient factual support.

We "review the procedural . . . reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Richardson*, 958 F.3d 151, 153 (2d Cir. 2020) (internal quotation marks omitted). As relevant to Sealed Defendant's challenge here, "[a] district court commits procedural error where it" either (1) "makes a mistake in its Guidelines calculation," (2) "rests its sentence on a clearly erroneous finding of fact," or (3) "fails adequately to explain its chosen sentence." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). To adequately explain its chosen sentence, a district court "must include an explanation for any deviation from the Guidelines range." *Id.* (internal quotation marks omitted).

Contrary to Sealed Defendant's assertion, his sentence is properly analyzed as a variance from, not a departure under, the Guidelines. For starters, that is how the district court characterized its own sentence, stating on the record at sentencing that it was "going to *vary* upward." App'x at 211 (emphasis added). That characterization was undoubtedly correct as a matter of law. We have explained that a "departure . . . refers only to non-Guidelines sentences imposed"

11

on the basis of factors *within* "the framework set out in the Guidelines," whereas a "variance is a modification of the applicable Guidelines sentence 'that a District Court may find justified under . . . sentencing factors'" *extrinsic* to the Guidelines – namely, those "set forth in 18 U.S.C. § 3553(a)." *United States v. Stewart*, 590 F.3d 93, 137 n.32 (2d Cir. 2009) (quoting *Irizarry v. United States*, 553 U.S. 708, 714–15 (2008)) (alterations omitted). Here, the record makes clear that the district court relied on the section 3553(a) factors in imposing an above-Guidelines sentence. After discussing such factors at length, the district court reasoned that "the Guidelines . . . understate[d] the severity of the obstruction," App'x at 209, thus complying with section 3553(a)'s requirements to consider "the nature and circumstance of the offense" and "for the sentence imposed to reflect the seriousness of the offense," 18 U.S.C § 3553(a)(1), (2)(A). The upshot is that the district court had no duty to give advance notice of this variance. While district courts must "give the parties reasonable notice that it is contemplating . . . a *departure*," Fed. R. Crim. P. 32(h) (emphasis added), this requirement does not extend to variances, *see Irizarry*, 553 U.S. at 716; *United States v. Gilmore*, 599 F.3d 160, 167 (2d Cir. 2010).

Furthermore, the district court provided an adequate explanation of its rationale for the upward variance in its analysis of the severity of Sealed Defendant's obstruction of justice. Sealed Defendant maintains that, because he received a twelve-level enhancement for his obstruction-of-justice conviction's nexus to international or domestic terrorism, *see* U.S.S.G. § 2J1.2(b)(1)(C), and there was no evidence that his obstruction caused actual harm, the district court improperly determined that the obstruction Guideline was too lenient. The Guidelines Manual provides that "[n]umerous offenses of varying seriousness may constitute obstruction of justice" and "may, therefore, range from a mere threat to an act of extreme violence." *Id.* § 2J1.2, Background. The twelve-level enhancement under section 2J1.2(b)(1)(C) that applied to Sealed Defendant simply reflected the fact that the obstruction occurred in a matter related to international or domestic terrorism; this enhancement, while significant, bears on the context in which the obstruction occurred, not on the relative severity of Sealed Defendant's conduct or its actual consequences. The district court determined that Sealed Defendant "was not just obstructing the [g]overnment's investigation of his own misconduct, he was affirmatively . . . assisting enemies of the United States," and that this conduct went beyond "garden variety obstruction, like taking the SIM

13

card out of your phone." App'x at 203–04. We see no reason to disturb the district court's finding that Sealed Defendant's obstruction of justice, which involved providing confidential information to suspected terrorists, justified varying upward to reflect the seriousness of this offense.

We also reject Sealed Defendant's contention that the facts before the district court were insufficient to support the section 3A1.2 "Official Victim" enhancement. Given the evidence that Sealed Defendant knew the victims of his threats were government officers and that he threatened them because he was removed from the government payroll, it was not clear error for the district court to determine that he was motivated by actions his victims took in their official capacity as federal agents. *See United States v. Salim*, 549 F.3d 67, 76 (2d Cir. 2008).[3]

---

[3] We also note that the parties stipulated to the Official Victim enhancement and the factual underpinnings of that enhancement. Where "the record clearly demonstrates that the stipulation was knowing . . . and voluntary," as here, "a factual stipulation in a plea agreement is a valid basis for a factual finding relevant to sentencing." *United States v. Granik*, 386 F.3d 404, 413 (2d Cir. 2004) (citations and internal quotation marks omitted). Because Sealed Defendant knowingly entered the plea agreement and confirmed that he understood the government would have to prove his guilt beyond a reasonable doubt at trial, the district court was justified in considering his stipulated plea agreement as additional evidence to support the Official Victim enhancement. *See id.* (permitting a factual finding based on a stipulation where "the plea agreement makes a stipulation clearly and explicitly" and "the defendant signs the agreement and allocutes to understanding the consequent loss of the right to put the government to its proof").

**C.      Sentencing by Videoconference**

Finally, Sealed Defendant argues that the district court erred by sentencing him via videoconference – variously characterizing this putative error as a "CARES Act [v]iolation," a "due process" violation under the "[F]ifth [A]mendment," and/or a violation of "Federal Rule of Criminal Procedure 43." Sealed Defendant Br. at 54–56 [hereinafter Sealed Defendant Br.].  In particular, Sealed Defendant argues that the district court (1) "fail[ed] to lay [adequate] factual foundation for its conclusion that [his] sentencing could not be further delayed without doing serious harm to the interests of justice," thereby "violat[ing] the CARES Act requisites for remote sentencing," and (2) "fail[ed] to ensure that [his] waiver of his right to be present at sentencing was knowing and voluntary." *Id.* at 54 (capitalization standardized).  But as discussed below, the former of these requirements is inapplicable in this case, and the latter was indeed satisfied here.

We recently held that, in order to invoke the CARES Act's exception to Federal Rules of Criminal Procedure 43 (which provides "a criminal defendant . . . the right to be present during sentencing") and 53 (which imposes a "general ban on videoconferencing of criminal proceedings"), a district court must not only

secure the defendant's knowing and voluntary waiver of his right to appear, but must also provide an on-the-record explanation of its "specific reasons" for "find[ing] . . . that the sentencing cannot be further delayed without serious harm to the interests of justice." *Leroux*, 36 F.4th at 120–21 (quoting *United States v. Coffin*, 23 F.4th 778, 779 (7th Cir. 2022) (quoting CARES Act, § 15002(b)(2)(A), 134 Stat. at 529)) (alterations omitted). But since the sentencing-by-videoconference here was conducted under seal, the district court did not *need* to abide by the CARES Act's full suite of procedural safeguards.

That is because the CARES Act is not a freestanding source of affirmative rights for defendants or affirmative procedural obligations for sentencing courts. Rather, it is a "statutory exception" that allows district courts to conduct sentencings-by-videoconference in circumstances where they would otherwise be forbidden under "Rule 43 *and* Rule 53[]." *Id.* at 120 (emphasis added). As we explained in *Leroux*, Rule 53 "prohibits *public* videoconferencing of criminal proceedings." *Id.* (emphasis added). We now clarify that it applies *only* to public videoconferencing – and not to videoconferencing of proceedings conducted under seal. Rule 53, on its face, bars "the *broadcasting* of judicial proceedings," Fed. R. Crim. P. 53 (emphasis added), which clearly entails "*public*" distribution to

16

make something *"widely known,"* *Broadcast*, Merriam-Webster, https://www.merriam-webster.com/dictionary/broadcast (last visited August 31, 2022) (emphasis added).[4]

Here, the sentencing proceeding was neither "broadcast," Fed. R. Crim. P. 53, nor conducted by "public videoconferencing," *Leroux*, 36 F.4th at 120. On the contrary, the district court took care to confirm before going forward with the proceeding that "[t]his whole case is sealed," and that "there is nobody on this [Skype] call who shouldn't be" – i.e., no one other than Sealed Defendant, his wife, and his defense counsel; the government's lawyers; and the judge herself. App'x at 122. Therefore, the sealed sentencing here fell outside of the prima facie scope

---

[4] In so holding, we are mindful of our Court's previous statement – in the dicta of a decision concerning "whether we should create an exception to the common law right to inspect and copy judicial records for videotaped depositions" – that Rule 53 "forbid[s] all filming in courtrooms *whether intended for private or for public use* and whatever the subject." *United States v. Salerno (In re CBS, Inc.)*, 828 F.2d 958, 959–60 (2d Cir. 1987) (emphasis added; other emphasis omitted). "But dicta are not and cannot be binding." *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006) (internal quotation marks and alteration omitted). Rather, only "[h]oldings – what is necessary to a decision – are binding." *Id.* (citation omitted). It is plain that *CBS*'s passing statement about Rule 53 was not "necessary" to its bottom-line "decision," *id.*, that there is no "generalized right of privacy enjoyed by participants in judicial proceedings" and therefore no "exception to the common[-]law right to inspect and copy judicial records for videotaped depositions," 828 F.2d at 959–60. Even if it were binding on us, the logic of *CBS*'s dicta would be readily distinguishable from that of our holding here, insofar as it addressed a hypothetical involving *after-the-fact* "private use" of a videotaped courtroom proceeding for purposes of using it as evidence in a *different* proceeding. *See id.* at 959. In other words, the "private use" at issue in the *CBS* panel's hypothetical would still entail dissemination of a video recording to individuals and entities other than the parties to the judicial proceeding being captured on video. Where, as here, a *sealed* sentencing proceeding is conducted by videoconference, no such dissemination occurs.

of Rule 53, and the district court had no need to invoke the CARES Act's exception to Rule 53's ban on public broadcasting of courtroom proceedings. Thus, even if Sealed Defendant *could* establish that the district court failed to state adequately "specific reasons" for "find[ing] . . . that [his] sentencing [could] []not be further delayed without serious harm to the interests of justice," *Leroux*, 36 F.4th at 120–21, that would not avail him.

With Rule 53 off the table, the only live issue is Sealed Defendant's invocation of his right "[u]nder both the Constitution and . . . Rule 43(a)(3) . . . to be present during sentencing." *Id.* at 120. But even "[p]rior to the enactment of the CARES Act," we "recognized" that a defendant's right to be physically present at sentencing is waivable "as long as [his] waiver is knowing and voluntary." *Leroux*, 36 F.4th at 120 (citations omitted); *see also United States v. Salim*, 690 F.3d 115, 122 (2d Cir. 2012) (explaining that while "a criminal defendant has the right to be present during sentencing" under "both the Constitution['s] [Fifth Amendment Due Process Clause] and Federal Rule of Criminal Procedure 43(a)(3)," he "may waive [that] right" in "a non-capital case, . . . as long as [such] waiver is knowing and voluntary"), *superseded by statute on other grounds as stated in Leroux*, 36 F.4th at 120; Fed. R. Crim. P. 43(c)(1)(B) ("A defendant

18

who . . . pleaded guilty . . . waives the right to be present . . . in a noncapital case, when the defendant is voluntarily absent during sentencing.").

Here, it is readily apparent that Sealed Defendant *did* validly waive his right to an in-person sentencing. While the government must prove "by a preponderance of the evidence that a defendant waived his constitutional rights," *Salim*, 690 F.3d at 122 (citation omitted), that burden is easily met here. The district court confirmed with both Sealed Defendant and his attorney that he understood he had the right to be sentenced in person, that his sentencing could be delayed until it could be conducted in person, and that he was waiving his right to challenge his remote sentencing. Sealed Defendant also attested on the record that no one had threatened or coerced him into proceeding via videoconference. These facts confirm that Sealed Defendant intentionally relinquished his right to be sentenced in person. *See United States v. Olano*, 507 U.S. 725, 733 (1993). And Sealed Defendant offers no evidence that his waiver was either unknowing or involuntary. Thus, a preponderance of the evidence shows that he waived his right to an in-person sentencing.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

19